## M. M. SCOTT V. THE STATE.

No. 23218. Delivered December 5, 1945.

The opinion states the case.

*Polk Shelton,* of Austin, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The offense is murder. The punishment assessed is confinement in the state penitentiary for a term of five years.

The State's evidence shows that Mr. and Mrs. Walter Stark rented a dwelling-house from appellant and his wife in the month of February, 1944, and moved into the same; that they agreed to pay $35.00 per month as rent for the use and occupancy of the house. They paid $25.00 for the month of February and $35.00 for the months of March and April. Then Mrs. Stark consulted the O.P.A. with reference to the amount of the rent and was advised by them that $22.50 was all she could pay; that if she continued to pay $35.00 per month, she would be violating the law; that thereafter she declined to pay $35.00 as she had agreed to do but offered to pay $22.50. Mr. Scott declined to accept said sum but insisted that she comply with her contract or vacate the premises which she declined to do until she could find another house to move into. Thereupon a suit for forcible detainer was instituted by Scott against Mr. Walter Stark and Mrs. E. E. Stark. The case was tried on July 17th, which resulted in a judgment of restitution being entered in favor of M. M. Scott. A writ of restitution was not issued until the 29th day of July. On the morning of July 20th, defendant (M. M. Scott) and his son, Winfield Scott, appeared at the Stark home, armed with a pistol, for the purpose of putting them out. Mr. Stark was not at home but his wife was there. Appellant, who saw her through the window, said to his son: "Shoot the old bitch through the window." She immediately telephoned the sheriff and the police. She also telephoned her brother, Jessie Singleton. After the lapse of a short time, her brother appeared at the Stark home, armed with a pistol and accompanied by his 14-year-old son. Upon his arrival, he and his son went into the Stark home, and after a short conversation with Mrs. Stark, he went to where the Scotts were at their automobiles and inquired of them: "What's the matter, Winfield? Can't you give her a chance to get out?" They then began shooting at Jessie Singleton, who immediately fell to the ground mortally wounded. Mr. Singleton's son, who was in the house at the time and saw his father fall, picked up a .22 caliber rifle and shot Winfield Scott through the head and he, too, fell mortally wounded. The boy then began to shoot at M. M. Scott, striking him four or five times. Appellant, after being wounded, ran away, carrying with him the pistol of his

dead son, but left his own pistol lying on the bumper of his car. After M. M. Scott had departed, and the Singleton boy had emptied his rifle, he walked out to the body of his father, picked up his .32 caliber pistol and shot Winfield Scott through the neck.

Appellant did not testify or offer any affirmative defense. He did, however, introduce his wife and his daughter-in-law and proved by them that the pistol exhibited to the court and jury belonged to his son, Winfield Scott. It makes no difference with whose gun the deceased was killed or by whom of the two he was killed, since the evidence shows that they were acting together, aiding and abetting each other in the commission of the offense, which made them principals. Just why the court failed to instruct the jury relative to the law of principals, we frankly admit that we do not understand.

The only complaint brought forward by appellant relates to Paragraph 10-a of the court's charge, which reads as follows:

"You are instructed that that portion of the testimony of the witness, Mrs. Walter Stark, concerning actions of various persons made and done out of the presence of the defendant, M. M. Scott, is admitted for the limited purpose of showing all relevant facts and circumstances relating to the killing, if it does, and the previous relationship existing between the defendant and the deceased, Jessie Singleton, together with all relevant facts and circumstances tending to show the condition of the mind of the defendant at the time of the homicide, if it does, which may be considered by the jury in determining the punishment to be assessed, if any."

Appellant objected to this charge on the following grounds: (a) Because it was not a proper application of the law with reference to the testimony of Mrs. Walter Stark; (b) because it is upon the weight of her testimony; (c) because it places an undue limitation upon the testimony that was to go to the jury in the case; (d) because it permits the jury to consider the testimony of Mrs. Walter Stark concerning acts and statements made at various places out of the presence and hearing of the defendant; (e) because nowhere therein is the testimony of Mrs. Stark relative to the actions and conversations between her and the defendant, M. M. Scott, limited or restricted, but permits the jury to consider the same for all purposes.

Appellant cites us to the case of Riles v. State, 150 S. W. (2d) 1043, as sustaining his contention. In that case the court

charged the jury in the language of Art. 1257a, P. C., which permits the admission in evidence of all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the homicide which may be considered by the jury in determining the punishment to be assessed. The judgment was reversed, it being held that the charge in question should not have been given.

This statute is but a rule of evidence enacted by the Legislature as a guide to the court in admitting relevant evidence on whether or not adequate cause existed at the time of the homicide, by which is meant such cause as would commonly produce in a person of ordinary temper that degree of anger, rage or sudden resentment as to render the mind incapable of cool reflection so as to bring it within the definition of murder without malice. The trial court, in a murder case, may, in his charge to the jury, define "adequate cause" and instruct them that if adequate cause, as the same is defined, existed at the time of the homicide, then they could not assess the punishment in excess of five years' confinement in the penitentiary. However, to instruct the jury in the language of the statute which is nothing but a rule of evidence, as we have heretofore said, was first held by this court to be error in the case of Crutchfield v. State, 110 Tex. Cr. R. 420. See also Hill v. State, 95 S. W. (2d) 106; Jamison v. State, 148 S. W. (2d) 410, where the propriety of giving such a charge has been fully discussed, and we see no need for any further discussion thereof.

Therefore, in keeping with the prior decisions by this court, we feel constrained to reverse the judgment of conviction in this case, and it is so ordered.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.