Tommy ALBRITTON, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–82–094 CR.

Court of Appeals of Texas,
Beaumont.

May 11, 1983.

Rehearing Denied June 3, 1983.

Sam Adamo, William W. Burge, Houston, for appellant.

James H. Keeshan, Dist. Atty., Conroe, for appellee.

## OPINION

DIES, Chief Justice.

Appellant, Tommy Albritton, along with Gregory James Thedford, was indicted for the murder of Charles Rudy Powell, Jr. The State chose not to try Thedford (hereafter sometimes referred to as "Greg"). A jury found appellant guilty, and assessed punishment at forty years confinement in the Texas Department of Corrections, from which this appeal is perfected.

Appellant's ground of error number one is, "The evidence is insufficient to support the verdict." Such a challenge must be considered before disposing of a case. *Smith v. State,* 646 S.W.2d 452, 453 (Tex.Cr. App.1983); *Hooker v. State,* 621 S.W.2d 597 (Tex.Cr.App.1980). The State could not have made a case without the testimony of Mary Catherine Nobra (hereinafter "Cathy"). Appellant contends she was an accomplice as a matter of law, and the State produced no corroborating evidence. If such be true, of course, under Texas law, the State has not made a case against appellant. *TEX.CODE CRIM.PROC.ANN. art. 38.14* (Vernon 1979); *25 TEX.JUR.3d § 3440, at 263* (1983), and authorities cited. We shall answer the second issue first. Did the State corroborate Cathy's testimony? We have carefully reviewed the thirteen volumes of the statement of facts, and while the State makes a valiant effort in its brief to point to such corroborating evidence, we are unable to find it.

 We, therefore, must determine if Cathy was an accomplice as a matter of law. This depends on whether she, acting with the intent to promote or assist in the commission of the offense, solicits, encourages, directs, aids or attempts to aid in the commission of the offense. *18 TEX.JUR.3d § 153, at 216* (1982), and authorities cited. A witness is not deemed an accomplice because he or she knew of the crime but failed to disclose knowledge thereof or even concealed it. *Drummond v. State,* 624 S.W.2d 690 (Tex.App.—Beaumont 1981), disc. rev. ref'd, 628 S.W.2d 781 (1982). See the authorities cited in *18 TEX.JUR.3d § 153, at 220* (1982).

Appellant (Tommy), Greg, Cathy, and the deceased, Powell, were all friends in high school in the late 60's or early 70's. The year 1977 saw Tommy and his wife, Terri, living next to Greg and Cathy at Hockley. In that year, burglars broke into Greg and Cathy's home and stole a large number (perhaps 20,000) of Mandrax pills.[1] On Friday, March 11 of that year (1977), Powell was found dead at the wheel of his station wagon in a rather rural area of Montgomery County, Texas. Officers questioned Tommy (appellant), his wife, Terri, his brother, Mark, Greg and Cathy, but no charges were filed. Then, in 1981, a Texas Ranger and other officers questioned Cathy again. By then, she and Greg had split and she was living with someone else who advised her to tell the officers the truth. She gave a statement which later was heard as her testimony by the jury. Briefly, it was that Greg, appellant, and Powell were engaged in drug trafficking. Apparently, the drugs were secured mainly from a Mexican who obtained them from Mexico. The large cache of Mandrax taken at Greg's house was partly owned by appellant. All the parties mentioned herein, along with others, extensively used various drugs. Appellant informed Greg he believed Powell orchestrated the drug robbery; that he, appellant, was going to kill Powell because of this. Cathy heard this and also heard appellant's suggestion that Greg invite Powell

to his house to sample an order of Cocaine. According to Cathy, it was appellant's desire to lure Powell, after determining the quality of the Cocaine, to a rural road, then shoot Powell. This was done, and Cathy admitted taking some of the drugs herself at the sampling. Powell left Greg's house. Later that afternoon, at 5 or 6 p.m., appellant informed Cathy and Greg he had done it. The autopsy report revealed Powell had been shot four times in the neck and head with a 32 caliber gun. The murder weapon was never found.

 The only evidence we have found that Cathy aided or encouraged in the scheme was her admission that she took some Cocaine at the Powell sampling. However, according to Cathy, she and Greg, and appellant and his wife were consistent users of a variety of drugs, as was Powell. Powell did not need Cathy's participation in the sampling to "lure" him into the death scene as appellant argues, for Powell, Greg, and appellant were not only used to taking drugs together, but were in the business of buying and selling drugs. We have, therefore, concluded that Cathy was not an accomplice as a matter of law and that the trial court acted properly in submitting this issue to the jury. *Drummond v. State,* supra (at 692), and authorities cited. This ground of error is overruled.

Appellant's ground of error number two follows:

"The trial court committed reversible error by instructing the jury that even if they found Mary Catherine Nobra to be an accomplice witness, they could convict the appellant."

 Where there is a doubt whether a witness is an accomplice, as we believe there is here, it is proper to submit the issue to the jury. *Carrillo v. State,* 591 S.W.2d 876 (Tex.Cr.App.1979); *Colunga v. State,* 527 S.W.2d 285 (Tex.Cr.App.1975); *Ward v. State,* 520 S.W.2d 395 (Tex.Cr.App.1975). The trial court correctly charged the jury on the accomplice rule and further instructed the jury if they found Cathy was an

1. Testimony placed their street value at $1.00 to $1.50 per pill.

accomplice "then you cannot convict the defendant unless you further believe that there is other evidence in the case, outside of the evidence of the said Mary Catherine Nobra tending to connect the defendant with the commission of the offense charged in the indictment," etc. This ground of error is overruled.

Ground of error number three follows:

"The trial court committed reversible error in admitting irrelevant and inflammatory testimony regarding a wild party in which appellant participated which occurred subsequent to the murder."

In the first place, appellant did not object to the cross-examination of his wife until one and a half pages of her testimony came in, including most of that now objected to by appellant. But more importantly, the cross-examination and the rebuttal evidence given by Cathy were not on collateral matters.[2]

■ Appellant's wife, Terri, was called by appellant to the stand. She denied virtually everything Cathy had testified to including that she or appellant ever used or trafficked in drugs or that they had any drug dealings with the deceased, Powell, or Greg. Therefore, the cross-examination of Terri and the rebuttal by Cathy about a drug party, the use of drugs, their dealings with the deceased, Powell, went to the very heart of the State's case—the explanation of why appellant murdered Powell. This ground of error is overruled.

■ Appellant's fourth ground of error follows:

"The trial court committed reversible error in refusing to admit testimony offered by appellant which would show bias on the part of the State's key witness, Mary Catherine Nobra."

By bill of exception, appellant offered testimony of his wife concerning an alleged conversation with Cathy to the effect that she thought appellant thought she (Cathy) was not good enough for Greg and that

appellant was interfering with her relationship with Greg. We recognize, as of course we must, that the accused must be allowed great latitude in attempting to show ill feeling, bias or animus on the part of any witness testifying against him. See *Blair v. State,* 511 S.W.2d 277 (Tex.Cr.App.1974); *Wood v. State,* 486 S.W.2d 359 (Tex.Cr.App. 1972).

■ It would have been better if the trial judge had permitted this proffered testimony. However, on carefully reading all of the testimony including Terri's, Stark's, and Cathy's, we believe the jury had substantially the same testimony before it. The testimony offered but rejected was redundant. This ground of error is overruled.

Ground of error number five follows:

"The trial court committed reversible error in allowing the State to introduce testimony concerning drug transactions with persons unconnected with the murder and which were unrelated to the offense with which appellant was charged."

■ Appellant objects to testimony in the record that the drugs were obtained from one Simon Escamilla. However, the appellant himself asked questions about this individual and, in other instances, failed to object when the State inquired about this individual, and this subject. See *R. RAY, TEXAS LAW OF EVIDENCE CIVIL AND CRIMINAL § 27,* at 35 (Texas Practice 3d ed. 1980). This ground of error is overruled.

Ground of error number six:

"The trial court committed reversible error in allowing the State to introduce testimony of an extraneous offense of sale of marijuana which had nothing to do with motive for the murder."

■ Deborah Boblitt testified she was present and saw a large transfer of drugs between appellant and deceased in 1976. It is questionable whether appellant's objection to this testimony was timely but we believe the evidence was admissible.

**2.** Appellant cites us *Murphy v. State,* 587 S.W.2d 718 (Tex.Cr.App.1979); *Arechiga v.*

*State,* 462 S.W.2d 1 (Tex.Cr.App.1971).

Appellant, through his wife, contended he neither used nor dealt in drugs, and that he specifically never dealt in drugs with the deceased. *TEX.PENAL CODE ANN. § 19.06* (Vernon 1974), provides:

"In all prosecutions for murder or voluntary manslaughter, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense."

Certainly, the dealing of drugs between appellant and deceased was relevant to show the motive for the killing. And motive is admissible though it may show an extraneous offense. *Russell v. State*, 598 S.W.2d 238, 250–251 (Tex.Cr.App.1980), cert. denied, 449 U.S. 1003, 101 S.Ct. 544, 66 L.Ed.2d 300 (1980); *Stacy v. State*, 77 Tex.Cr.R. 52, 177 S.W. 114 (1915). That the transfer occurred prior to the killing does not make it inadmissible. *Flores v. State*, 151 Tex.Cr.R. 478, 209 S.W.2d 168 (1948); *Barnett v. State*, 76 Tex.Cr.R. 555, 176 S.W. 580 (1915); *Hubby v. State*, 8 Tex.App. 597 (1880). This ground of error is overruled.

Ground of error number seven states:

"The trial court committed reversible error in allowing the court reporter to read to the jury testimony concerning statements by appellant which were damaging to appellant and which were not requested by the jury."

The jury's note requested: "We wish the time that Kathy Nobra said that Tommie Albritton, Jr., came by their place in or near Hockley on the afternoon of March 11, 1977." The testimony of Cathy given in our record was:

"Q. What was the first indication that you had that something had happened to Charles Rudy Powell on that day?

"A. Tommy came over to the house— late afternoon four, five or six o'clock and uh, told Greg that it was

over, he had done it, he shot him in the head, did not have even enough cash to buy anything."

The portion appellant objects to is the words following "six o'clock."

■ *TEX.CODE CRIM.PROC.ANN. art. 36.28* (Vernon 1981), does provide that the court reporter read the requested testimony and "no other." However, we have no record of exactly what was read back to the jury. But assuming the reporter read back the witness's entire statement, we see no error in the court allowing the entire sentence to be read. The testimony had come in without objection and, while we can find no authority precisely on point, it would seem, unless otherwise excluded previously before the jury, the reporter should be permitted to finish a sentence, as had the witness, in testimony before the jury. This ground of error is overruled.

Ground of error number eight is:

"The trial court committed reversible error in overruling appellant's motion for mistrial based on argument of the prosecutor implying that the Grand Jurors had believed the testimony of the State's key witness, Mary Catherine Nobra."

During the prosecutor's argument to the jury, the following was said:

". . . as far as who may or may not have been convinced by any evidence of Catherine Nobra for example, you heard that she testified before the Grand Jury, and you cannot consider the indictment as any evidence of guilt, but Cathy Nobra spoke to a number of people before she came to this trial, and gave her—

"MR. ADAMO [appellant's trial counsel]: Your Honor, I object to his bringing in the Grand Jury testimony in this case, it is improper argument and furthermore we were never able to even see any statements or recordings.

"THE COURT: Sustain the objection, let's stay within the record of this trial. The jury will disregard.

"MR. ADAMO: And I ask for a mistrial, please.

"THE COURT: Overruled."

382

In general, "[p]roper arguments are within the area of a summation of the evidence, reasonable deductions from the evidence, answers to arguments of opposing counsel, and a plea for enforcement of the law." *23 TEX.JUR.3rd § 2903 at 708* (1982). In *Harris v. State,* 475 S.W.2d 922 (Tex.Cr.App.1972), the prosecutor made the following argument:

" 'Now, again, he said that the State wields a lot of power, and *he went through the process of the grand jury indictment; at least nine people in the past have felt that there was evidence warranting a conviction, because they returned a true bill.'* " (emphasis in original)

The Court wrote (at 923):

"The [emphasized] portion of the prosecutor's argument was a misstatement of the law; *it should not have been made,* and under some circumstances might well have been reversible error. However, in light of the circumstances in this particular case and the trial court's prompt action, we cannot conclude that the argument was so obviously prejudicial as to call for reversal. *Blackstock v. State,* 433 S.W.2d 699 (Tex.Cr.App.1968)." (emphasis added)

See also, *23 TEX.JUR.3d § 2932, at 751, et seq.* (1982). In view of the trial court's prompt action in the case at bar, as that noted in *Harris v. State,* supra, we hold this objectionable argument not constituting reversible error. This ground of error is overruled.

Appellant's ninth and final ground of error complains of the trial court's instructing the jury at the punishment phase of the trial on the contents of *TEX.PENAL CODE ANN. § 19.06,* set forth earlier in this opinion. Appellant cites us *Scott v. State,* 149 Tex.Cr.R. 4, 190 S.W.2d 828 (1945). That case, in following previous opinions, held that to instruct the jury in the language of *TEX.PENAL CODE ANN. art. 1257a,* the predecessor of *§ 19.06,* was reversible error, since this section was merely a rule of evidence. In *Wheeler v. State,* 156 Tex.Cr.R. 140, 239 S.W.2d 105,

106 (1951), the Court expressly overruled *Scott v. State,* supra, and held:

"Insofar as the Hill, Jamison, Riles and Scott cases hold that the substance of Art. 1257a should not be given in the charge, but should serve only as a guide to the court in passing upon the admissibility of testimony, they are, here now, expressly overruled."

Our research has failed to inform us that our Court of Criminal Appeals has changed its attitude. This ground of error is overruled. The judgment of the trial court is AFFIRMED.