Haney-Danny Lee v. State
















IN THE
TENTH COURT OF APPEALS
 

No. 10-97-005-CR

Â Â Â Â Â DANNY LEE HANEY,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â THE STATE OF TEXAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 
Â 
From the 54th District Court
McLennan County, Texas
Trial Court # 96-365-C
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

O P I N I O N
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â Danny Lee Haney appeals his conviction for murder. See Tex. Pen. Code Ann. Â§ 19.02
(Vernon 1994). The jury found Haney guilty of murder and sentenced him to life imprisonment
in the Institutional Division of the Texas Department of Criminal Justice. See Tex. Pen. Code
Ann. Â§ 12.32 (Vernon 1994). The jurors also fined Haney $10,000 as part of his punishment. Id. 
Haney brings two points of error alleging that the trial court erred in: (1) overruling his objection
to the phrasing of the accomplice witness instruction in the trial courtâs charge and (2) allowing the
State to go into the details of a prior conviction for assault during the punishment phase of the trial.
I. Factual Background
Â Â Â Â Â Â On March 3, 1996, four men were gathered inside an apartment when Danny Lee Haney
knocked on the window. Immediately after being let inside Haney began challenging the men by
asking if they âhad a problem with him,â apparently seeking to provoke a fight. Then Haney
turned his attention specifically toward Garry Brinegar. After Haney asked whether Brinegar knew
him, and Brinegar responded that he did not know who Haney was, Haney began punching
Brinegar in the face. This led to an initial struggle where Brinegar got Haney into a head-lock on
the floor and refused to let go until Haney calmed down, which Haney did not do. Instead Haney
ordered one of the other men in the room to kick Brinegar in the head, allowing Haney to get free. 
Â Â Â Â Â Â Soon after this initial fight ended, Haney and Brinegar began a series of confrontations which
became more violent as their fighting continued. Generally a fight would begin as Haney verbally
or physically attacked Brinegar, and then during the struggle Haney would order the other men to
hit or kick Brinegar to assist him in the conflict. As the fighting escalated, Haney rammed Brinegar
with the apartmentâs coffee table, then threw the table to the ground and broke off one of its legs. 
Using this table leg as a club Haney began repeatedly striking Brinegar on the head. Although
Brinegar tried to retreat into the other rooms of the apartment to escape, Haney blocked any escape
and continued hitting Brinegarâs head with the table leg. After the beating had ceased and after
Haney had washed his hands in the bathroom, Haney administered one or two final kicks to
Brinegarâs head as he left the apartment. On his way out Haney informed the other men in the
apartment that they should tell the police several African-American men broke into the apartment
and beat up Brinegar. Brinegar was taken to the hospital after Haney left, but Brinegarâs skull had
been fractured as a result of the beating and he died from his injuries. 
II. Points of Error
Â Â Â Â Â Â In his first point of error, Haney contends that the trial court erred in overruling his objection
to the phrasing of the accomplice witness instruction in the trial courtâs charge. Article 38.14 of
the Code of Criminal Procedure requires that the testimony of an accomplice be corroborated by
other evidence connecting the defendant with the charged offense before the accompliceâs testimony
may be used as the basis for a conviction. Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon
1979). In determining if a witness is an accomplice, courts look at the witnessâ participation
âbefore, during or after the commission of [the] crimeâ and if the witness can be âprosecuted for
the offense with which the accused is charged.â Gamez v. State, 737 S.W.2d 315, 322 (Tex. Crim.
App. 1987). When the evidence shows that the witness is an accomplice as a matter of law, the
trial court should instruct the jury of this finding. Solis v. State, 792 S.W.2d 95, 97 (Tex. Crim.
App. 1990); Gamez, 737 S.W.2d at 322; Mize v. State, 915 S.W.2d 891, 895 (Tex.
App.âHouston [1st Dist.] 1995, pet. refâd). If however there is a fact question about whether or
not the witness is an accomplice, the trial court should instruct the jurors to resolve this factual
issue, and if they find the witness to be an accomplice then there must be corroborating evidence
connecting the defendant to the crime in order to convict. See Albritton v. State, 662 S.W.2d 377,
379-80 (Tex. App.âBeaumont 1983, pet. refâd); see also Gamez, 737 S.W.2d at 322; Kunkle v.
State, 771 S.W.2d 435, 439 (Tex. Crim. App. 1986); Ashford v. State, 833 S.W.2d 660, 664 (Tex.
App.âHouston [1st Dist.] 1992, no pet.). 
Â Â Â Â Â Â Haney contends that the phrasing of the accomplice witness instruction given by the trial court
improperly places the burden of proof on the defendant to show whether or not the witness was an
accomplice. In the instant case the trial courtâs charge contained instructions that the jury should
determine whether or not witnesses Lloyd Fulfer, Aaron McMahan, and Adislado Marsh were
accomplices of the defendant in committing murder. These three witnesses had been in the
apartment during the beating, and there was testimony that these individuals had hit or kicked the
victim at Haneyâs request. The portion of the charge instructing the jury on the application of the
accomplice witness rule to Fulfer reads:
Now, if you believe from the evidence beyond a reasonable doubt that an offense was
committed and you further believe from the evidence that the witness Lloyd Fulfer was
an accomplice, or you have a reasonable doubt whether he was or not, as that term is
defined in the foregoing instructions, then you cannot convict the defendant upon the
testimony of the said Lloyd Fulfer unless . . . [subsequent text explains the accomplice
witness rule]. (Emphasis added).
Â 
Haney objects specifically to the use of the phrase âor notâ in the instruction, claiming that this
indicates to the jury that the defendant has the burden of proof on whether the witness was proved
to be an accomplice of the defendant. This objection was made to each of the three identical
paragraphs in the charge applying the accomplice witness rule to Fulfer, McMahan, and Marsh
respectively. 
Â Â Â Â Â Â In criminal cases the State must prove all elements of the offense beyond a reasonable doubt
before a defendant may be convicted. Tex. Code Crim. Proc. Ann. art. 38.03 (Vernon Supp.
1997). The use of instructions on conclusive or rebuttable presumptions which lessen the Stateâs
burden of proof impermissibly shift that burden onto the defendant in violation of due process. See
Francis v. Franklin, 471 U.S. 307, 317, 105 S.Ct. 1965, 1972-73 (1985); Sandstrom v. Montana,
442 U.S. 510, 523-24, 99 S.Ct. 2450, 2459 (1979); Goswick v. State, 656 S.W.2d 68, 69-70 (Tex.
Crim. App. 1983). Because Haney seeks a reversal of his conviction based upon the alleged
burden-shifting effect of this accomplice witness instruction, we examine this charge to determine
(1) whether the trial courtâs charge contained error and (2) if âsufficient harm resulted from the
error to require reversal.â Porter v. State, 921 S.W.2d 553, 557 (Tex. App.âWaco 1996, no
pet.).
Â Â Â Â Â Â Haney has cited no cases discussing his proposition that the âor notâ language shifts the burden
of proof onto the defendant, and we have found none. Thus, we must examine the text of the
instruction to determine the effect of this language. The trial courtâs instruction informs the jury
that if the jurors believe the witness was an accomplice of Haney then there must be evidence
corroborating the witnessâ testimony. The instruction also tells the jurors that, if after looking at
the evidence they have a reasonable doubt regarding whether or not the witness acted as Haneyâs 
accomplice, then corroboration is necessary. The effect of this instruction does not shift the burden
of proof onto the defendant, but in fact it places the burden on the State to prove that the witness
was not an accomplice. If the State failed to prove beyond a reasonable doubt that the witness was
not an accomplice of Haney, then the instruction given by the trial court properly requires jurors
to convict only if the witnessâ testimony has been corroborated by other evidence linking Haney
with the crime. See Boozer v. State, 717 S.W.2d 608, 611 (Tex. Crim. App. 1984) (when the State
fails to object to the courtâs giving an accomplice witness instruction it bears the burden of proof
on this issue). Haneyâs first point is overruled because we conclude the accomplice witness
instruction given by the trial court did not improperly shift the burden of proof onto the defendant. 
Â Â Â Â Â Â In his second point of error, Haney claims that the trial court erred in allowing the State to
present testimony describing the factual details surrounding one of Haneyâs prior convictions for
assault when he had already stipulated that the conviction had occurred. During the punishment
phase of the trial Haney stipulated to his prior criminal record consisting of five prior convictions
for: unauthorized use of a motor vehicle, theft, unlawfully carrying a weapon, and two convictions
for assault. The judgment for each of these offenses was introduced into evidence. Then the State
called Matthew Hammond to testify that one of Haneyâs assault convictions resulted from an attack 
in which Haney began hitting Hammond without provocation and included hitting him over the
head with a hot iron. Haney objected to this evidence asserting that it was âreversible error to go
into the details of any prior conviction that has been admitted in the . . . punishment phase,â but
this objection was overruled.
Â Â Â Â Â Â On appeal Haney contends that information about a defendantâs prior criminal record should
be limited to introducing evidence of a final conviction without any factual details about the prior
offense. Haney believes that details about past acts may only be introduced when the State seeks
to prove an unadjudicated crime or bad act.
Â Â Â Â Â Â Cases interpreting prior versions of section 3(a) of article 37.07 of the Code of Criminal
Procedure hold that details about a prior criminal act, which resulted in a final conviction, are
inadmissible in the punishment phase of a later trial. See Smith v. State, 930 S.W.2d 227, 229-30
(Tex. App.âBeaumont 1996, pet. refâd); see also Tex. Code Crim. Proc. Ann. art. 37.07, Â§ 3(a)
(Vernon Supp. 1997); Johnson v. State, 650 S.W.2d 784, 792 (Tex. Crim. App. 1983); Walker v.
State, 610 S.W.2d 481, 483 (Tex. Crim. App. 1980). However, after the Court of Criminal
Appealsâ decision in Grunsfeld v. State,


 the legislature amended section 3(a). 
Â Â Â Â Â Â The legislature provided in section 3(a) that either the State or the defendant may offer
evidence of âany matter the court deems relevant to sentencing.â Tex. Code Crim. Proc. Ann.
art. 37.07, Â§ 3(a). The statute does not limit what evidence a trial judge might consider relevant,



but specifies that relevant evidence at sentencing includes, inter alia, the defendantâs prior criminal
record and evidence of an extraneous crime or bad act proven beyond a reasonable doubt. Id. 
While it could be argued that the details about a past conviction are part of the defendantâs âprior
criminal recordâ because the legislature deleted the definition of this term when it amended 37.07,



we believe the better approach is to treat the details surrounding a prior conviction as an extraneous
crime or bad act which must be proved to the jury beyond a reasonable doubt. 
Â Â Â Â Â Â By its own terms section 3(a) of article 37.07 is not limited to extraneous crimes or acts which
are unadjudicated. See Tex. Code Crim. Proc. Ann. art. 37.07, Â§ 3(a). The text says that
evidence about the defendantâs bad acts is admissible âregardless of whether he has previously been
charged with or finally convicted of the crime or bad act.â Id. Thus, the fact that the defendant
was actually convicted of the extraneous crime does not prevent the prosecution from proving
beyond a reasonable doubt what that prior offense involved factually. The Court of Criminal
Appeals has defined an extraneous offense as âany act of misconduct, whether resulting in
prosecution or not, that is not shown in the charging papers.â Rankin v. State, No. 1019-94, 1996
WL 6757 (Tex. Crim. App. January 10, 1996) (emphasis omitted). Similarly, we believe that
37.07's use of the term âextraneous crimeâ is not limited to unadjudicated crimes, but includes both
adjudicated and unadjudicated crimes which the defendant can be proved to have committed beyond
a reasonable doubt. 
Â Â Â Â Â Â By allowing the State to present evidence about extraneous crimes or bad acts jurors learn âas
much useful information as possible in deciding the appropriate punishment for the individual
defendant.â Mendiola v. State, 924 S.W.2d 157, 163 (Tex. App.âCorpus Christi 1995, no pet.)
(quoting Bowser v. State, 816 S.W.2d 518, 521 (Tex. App.âCorpus Christi 1991, no pet.). For
example, in Cox v. State, the Fort Worth Court of Appeals held that evidence presented during the
punishment phase of an aggravated robbery trial, which showed that the defendant had once
followed a woman home in the middle of the night, gone to her door, and turned her front door
knob, was admissible as a âbad actâ committed by the defendant. 931 S.W.2d 349, 356-57 (Tex.
App.âFort Worth 1996, pet. granted). We are unable to discern a reason why jurors, such as
those in Cox, can consider the facts surrounding a bad act, which was not a criminal offense, to
determine a proper sentence, but jurors cannot consider an event which led to a criminal conviction. 
See Standerford v. State, 928 S.W.2d 688, 693 (Tex. App.âFort Worth 1996, no pet.) (holding
that the trial court did not err in allowing the State to present evidence about the defendantâs prior
DWI convictions). Once the trial judge has made a threshold determination that evidence regarding
an extraneous crime is relevant, then the jury may consider it in deciding punishment if the State
proves the occurrence beyond a reasonable doubt. See Mitchell v. State, 931 S.W.2d 950, 953
(Tex. Crim. App. 1996). 
Â Â Â Â Â Â Consequently, Haneyâs second point is overruled because we conclude that the State may
present evidence about the details surrounding a defendantâs extraneous prior criminal conviction.


 
Furthermore, the trial courtâs charge on punishment properly instructed the jurors that before they
could consider other offenses in determining Haneyâs punishment they must have found beyond a
reasonable doubt that Haney had committed those offenses.
Â Â Â Â Â Â The judgment is affirmed.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â BOBBY L. CUMMINGS
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice
Â 
Before Chief Justice Davis,
Â Â Â Â Â Â Â Â Â Â Justice Cummings, and
Â Â Â Â Â Â Â Â Â Â Justice Vance
Affirmed
Opinion delivered and filed September 10, 1997
Publish
Â 
Â 
Â 
Â 
Â 
Â 
Â 



e='font-family:"CG Times"'>he did not know that the
Bunert Road Crossing is a low-water crossing designed for water to flow over
during heavy rains.

Â 

   Based on the quoted portion of Finding
of Fact No. 4, the court apparently chose to disbelieve StewartÂs testimony on
the issue of actual knowledge.Â  In addition, the court expressly stated that it
did not find RawlinsÂs testimony Âpersuasive or credibleÂ insofar as it was
inconsistent with the courtÂs findings and conclusions.Â  Thus, the court failed
to Âtake as true all evidence favorable to the [plaintiffs]Â and Âindulge every
reasonable inference and resolve any doubts in the [plaintiffsÂ] favor.ÂÂ  See
Miranda, 133 S.W.3d at 228.Â  By failing to do so, the court erred because
it applied an erroneous evidentiary standard in evaluating the evidence before
it.Â  Id. at 226-28.

Â Â Â Â Â Â Â Â Â  By evaluating the witnessesÂ
credibility, the court likewise erred.Â  See Durham, 860 S.W.2d at 66; Casso,
776 S.W.2d at 558; Alaniz, 105 S.W.3d at 347; Wilcox, 103 S.W.3d at
475; Tri-State Chemicals, 83 S.W.3d at 198; Thompson, 57 S.W.3d at
556; see also Miranda, 133 S.W.3d at 226-28.

Â Â Â Â Â Â Â Â Â  The courtÂs errors as identified in the
discussion regarding StewartÂs and WhitfieldÂs second and third issues will not
require reversal unless the errors probably caused the rendition of an improper
judgment.Â  See Tex. R. App. P. 44.1(a)(1).Â 
Because we will conclude that the evidence raises a fact question on the issue
of whether the City or Stewart had actual knowledge at the relevant time, these
errors did cause the rendition of an improper judgment.Â  Accordingly, we
sustain StewartÂs and WhitfieldÂs second, third, and fourth issues.




The CityÂs Knowledge[4]

Â Â Â Â Â Â Â Â Â  Stewart and Whitfield contend in their
sixth issue that the court erred by granting the CityÂs plea to the
jurisdiction because a fact question remains regarding whether the City had
actual knowledge of the dangerous condition.[5]

Â Â Â Â Â Â Â Â Â  Actual knowledge may be established by
circumstantial evidence.Â  See City of San Antonio v. Rodriguez, 931
S.W.2d 535, 537 (Tex. 1996) (per curiam); Palais Royal, Inc. v. Gunnels,
976 S.W.2d 837, 844 (Tex. App.ÂHouston [1st Dist.] 1998, pet. dismÂd by agr.);
Simons v. City of Austin, 921 S.W.3d 524, 528 n.2 (Tex. App.ÂAustin 1996,
writ denied); see also Lee Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778,
785 (Tex. 2001) (Âactual awarenessÂ element of gross negligence claim
may be proved by circumstantial evidence); LaRue v. Chief Oil & Gas,
L.L.C., 167 S.W.3d 866, 879 (Tex. App.ÂFort Worth 2005, no pet.) (same).

Â Â Â Â Â Â Â Â Â  Here, public works director Lynch
testified that the City did not have notice that the Bunert Road crossing was
flooded until Stewart called 9-1-1.Â  However, Lynch also testified that the
crossing had ÂsometimesÂ flooded in the past during heavy rains, that this
crossing was designed so that the water would flow over it during heavy rains,
and that the City had closed the low-water crossing several times before
because of flooding.

Â Â Â Â Â Â Â Â Â  The National Weather Service had issued
at least four pertinent notices on the afternoon and night preceding the accident.Â 
Rawlins, who was a former member of the City Council, testified that the City
knew prior to the accident that the crossing Âtended to flood during heavy rains.ÂÂ 
The court also admitted in evidence RawlinsÂs affidavit, in which she stated
that Corsicana Âpublic officials were on notice prior to May 1, 2004 of the
dangerous conditions the Bunert Road low-water crossing over Post Oak Creek
posed during light and heavy rains.Â

Â Â Â Â Â Â Â Â Â  In post-hearing briefing, Stewart and
Whitfield also provided the court with a copy of a 2001 Flood Protection
Planning Study prepared for the City of Corsicana.Â  Among other things, this
study states, ÂThe City of Corsicana has a history of flood problems and
damages within the Post Oak Creek drainage basin.ÂÂ  The study highlights the Bunert Road crossing as one of the problem areas.

Â Â Â Â Â Â Â Â Â  TxDOT had closed a portion of the
business route for Interstate 45, which is upstream from the Bunert Road crossing, because of flooding on the night of the accident.Â  At least one of the
police officers who responded to StewartÂs call had just assisted another
officer in apprehending a murder suspect.Â  Thus, it could be inferred that
these officers were patrolling the streets of Corsicana that night and knew of
the heavy rainfall.

Â Â Â Â Â Â Â Â Â  When we Âindulge every reasonable
inference and resolve any doubts in [StewartÂs and WhitfieldÂs] favor,Â we must
conclude that a fact question remains regarding whether the City had actual
knowledge of the dangerous condition.Â  See Rodriguez, 931 S.W.2d at 537
(rejecting no-evidence complaint because Â[d]epending on the position of the
leaks above the floor and the amount of rain, the jury might have inferred that
the person in charge knew that there would be water on the floorÂ); Palais
Royal, 976 S.W.2d at 844 (ÂPalais Royal actually knew that the ladder was
shortened and that visibility at the top of the ladder was obscured by the ÂdropÂ
ceiling which Palais Royal insisted on lowering.Â  These facts, albeit
circumstantial, constitute some evidence that Palais Royal knew the ladder was
dangerous.Â); Simons, 921 S.W.2d at 528 & n.2 (testimony of two
experts who testified that partition was dangerous and city Âmust have knownÂ
of the danger constitutes circumstantial evidence of cityÂs actual knowledge).

Â Â Â Â Â Â Â Â Â  Accordingly, we sustain StewartÂs and
WhitfieldÂs sixth issue.

StewartÂs Knowledge

Â Â Â Â Â Â Â Â Â  Stewart and Whitfield contend in their
fifth issue that the trial court erroneously applied a constructive knowledge
standard in assessing StewartÂs knowledge of the dangerous condition.

Â Â Â Â Â Â Â Â Â  The court found that Stewart
Âregularly drove over the Bunert Road CrossingÂ; that Â[h]e was aware that the
Bunert Road Crossing was in a low area and subject to flooding; and that he
Âknew that the Bunert Road Crossing could flood under the existing
weather conditions.Â (emphasis added) Â However, these findings directly
contradict StewartÂs testimony.

Â Â Â Â Â Â Â Â Â  The courtÂs finding does appear to resemble
a finding of constructive rather than actual knowledge.Â  Cf. CMH Homes, Inc.
v. Daenen, 15 S.W.3d 97, 102 (Tex. 2000) (premises owner may be liable to
invitee for dangerous condition if owner Âshould have known that a
condition on its premises created an unreasonable risk of harmÂ) (emphasis
added).Â  More importantly however, and as addressed in connection with several
of StewartÂs and WhitfieldÂs other issues, the court applied the wrong
evidentiary standard to StewartÂs testimony.

Â Â Â Â Â Â Â Â Â  When we Âindulge every reasonable
inference and resolve any doubts in [StewartÂs and WhitfieldÂs] favor,Â we must
conclude that a fact question remains regarding whether Stewart had actual
knowledge of the dangerous condition.Â  See Palais Royal, 976 S.W.2d at
844.Â  Thus, we sustain StewartÂs and WhitfieldÂs fifth issue.

Plea to the Jurisdiction

Â Â Â Â Â Â Â Â Â  Stewart and Whitfield contend in their
first issue that the court erred by granting the CityÂs plea to the
jurisdiction because fact questions remain on the issues of the CityÂs and
StewartÂs knowledge.Â  They contend in their fourth issue that the court
erroneously ruled on the merits of their claims in deciding the plea to the
jurisdiction.

Â Â Â Â Â Â Â Â Â  As previously observed, when a plea to
the jurisdiction Âimplicates the merits of the plaintiffsÂ cause of action and
the plea to the jurisdiction includes evidence, the trial court reviews the
relevant evidence to determine if a fact issue exists.ÂÂ  Miranda, 133
S.W.3d at 227.Â  The court may adjudicate the merits of the claim at this stage
only Âif the relevant evidence is undisputed or fails to raise a fact question
on the jurisdictional issue.ÂÂ  Id. at 228.

Â Â Â Â Â Â Â Â Â  Because fact questions remain on the
issues of the CityÂs and StewartÂs knowledge, the court erred by deciding the
merits of their claims and granting the plea to the jurisdiction.Â  See
Miranda, 133 S.W.3d at 227-28.Â  Accordingly, we sustain StewartÂs and
WhitfieldÂs first and fourth issues.

We reverse the order granting the CityÂs plea to
the jurisdiction and remand this cause to the trial court for further proceedings
consistent with this opinion.

Â 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief
Justice Gray dissenting with note)*

Reversed and remanded

Opinion delivered and
filed December 6, 2006

[CV06]

Â 

*Â Â Â Â Â Â Â  (Dissenting
note: ÂChief Justice Gray notes that there are many statements in the majority
opinion with which he does not agree, statements that ultimately lead the
majority to an erroneous judgment.Â  He therefore dissents from both the opinion
and the judgment.Â  But a separate opinion will not be issued.Â)









[1]
Â Â Â Â Â Â Â Â Â  Based on the time of StewartÂs
call to 9-1-1, the accident which serves as the basis for the suit occurred
around 1:30 a.m.

Â 





[2]
Â Â Â Â Â Â Â Â Â  The court issued findings of
fact and conclusions of law contemporaneously with its order granting the
CityÂs plea to the jurisdiction, on February 3, 2006.Â  Stewart and Whitfield
filed their notice of appeal on February 15.Â  The City filed a Request for
Findings of Fact and Conclusions of Law on February 23.Â  The court signed the
CityÂs proposed Findings of Fact and Conclusions of Law on March 8.





[3]
Â Â Â Â Â Â Â Â Â  Because of a 2005 amendment, a
governmental unit owes a person using a toll road the duty owed a licensee,
even though the person paid for the use of the road.Â  See Tex. Civ. Prac. & Rem. Code Ann. Â§ 101.022(c)
(Vernon Supp. 2006).Â  For other persons who pay for the use of government-owned
premises, a governmental unit owes the duty owed an invitee.Â  Thompson v.
City of Corsicana Housing Auth., 57 S.W.3d 547, 552 (Tex. App.ÂWaco 2001,
no pet.).





[4]
Â Â Â Â Â Â Â Â Â  Stewart and Whitfield do not
challenge the courtÂs conclusion that the condition was not a special defect.Â 
The courtÂs conclusion in this regard is supported by numerous authorities.Â  See,
e.g., State DepÂt of Highways & Pub. Transp. v. Kitchen, 867 S.W.2d 784,
786 (Tex. 1993) (per curiam); Tex. DepÂt of Transp. v. Fontenot, 151
S.W.3d 753, 761-62 (Tex. App.ÂBeaumont 2004, pet. denied); Corbin v. City of
Keller, 1 S.W.3d 743, 747-48 (Tex. App.ÂFort Worth 1999, pet. denied); but
cf. Tex. DepÂt of Transp. v. Abilez, 962 S.W.2d 246, 251 (Tex. App.ÂWaco 1998,
pet. denied) (TxDOT conceded that flooded highway constituted special defect).

Â 





[5]
Â Â Â Â Â Â Â Â Â  The dangerous condition at issue
is the flooded road, not the low-water crossing itself.Â  See Tex. DepÂt of
Transp. v. Ramirez, 74 S.W.3d 864, 867 (Tex. 2002) (per curiam) (quoting State
v. Rodriguez, 985 S.W.2d 83, 85 (Tex. 1999) (per curiam)) (Âthe Â[d]esign
of any public work, such as a roadway, is a discretionary function involving
many policy decisions, and the governmental entity responsible may not be sued
for such decisionsÂÂ); see also Tex.
Civ. Prac. & Rem. Code Ann. Â§ 101.056(2) (Vernon 2005).