Vincent Edward MIZE, Appellant

v.

The STATE of Texas, Appellee.

No. 01–94–00586–CR

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 14, 1995.

Jane C. Disko, Houston, for Appellant.

John B. Holmes, Jr., Lester Blizzard, Jane Waters, and Jeff Laird, Houston, for Appellee.

Before MIRABAL, ANDELL and HILL *, JJ.

## OPINION

MIRABAL, Justice.

A jury found appellant, Vincent Edward Mize, guilty of aggravated robbery. The

---

* The Honorable John Hill, former Chief Justice, Court of Appeals, Second District of Texas at Fort Worth, sitting by assignment.

jury found two enhancement paragraphs true, and assessed punishment at confinement for 99 years. In two points of error, appellant complains about the absence of an accomplice-witness instruction in the jury charge. We reverse and remand.

Appellant and a co-defendant, Russell Meadors, were tried together. The alleged accomplice, Suzanne Titlow, testified that on February 6, 1993, she, appellant, and Deanna "Nicole" Vincent (Nicole), went nightclubbing. Around two o'clock in the morning, they left the club and appellant drove to a gas station to use the phone to answer a page. Appellant then drove them to "a guy named Eric's house"—Titlow did not know Eric. Appellant went inside the house for 10 to 20 minutes while Titlow and Nicole waited in the car. Titlow was "high" on alcohol, marihuana and valium. Russell Meadors, appellant's co-defendant, arrived with another man, Tim; they waited in their car. Appellant came out of the house with some other guys who Titlow did not know. Appellant told Titlow and Nicole that he "was going to get some weed and did we want to go with him." Titlow said "yeah." Appellant, Meadors, Tim and the two women rode together in a blue rental car. There was one shotgun in the rental car. The other people got into two other cars and followed.[1]

They drove to a convenience store and appellant got out of the car and went and talked to the guys in the other car. Appellant then came back and he drove to a neighborhood of trailer homes. They drove by a particular trailer, and appellant showed Titlow where they were going to get the marihuana. Appellant then instructed Titlow to drop him off, along with Meadors and Tim, at the end of the street and to return in five minutes to pick them up. Titlow dropped them off and watched them disappear into the woods adjacent to the trailer park before driving away. Titlow drove around the neighborhood for five minutes and then re-

turned to the trailers. Nicole was passed out in the back seat.

When Titlow returned to the pick-up point, she saw Tim in the middle of the street motioning her to pull the car into the driveway of the trailer home. Tim had some keys and opened the trunk of a car; he took packages of marihuana out of the trunk and put them into the back seat of the car where Nicole was passed out. Titlow saw Meadors come out of the trailer with an older Mexican male and a white female. Meadors had a shotgun or rifle.

Soon after Meadors appeared, Titlow heard appellant yell something. She could not, however, see appellant and did not know where he was. She then heard a gunshot. At that point, Titlow "threw the car in reverse and then I went in the ditch and then I got out and I drove down the road and Russell and Tim were down there and they got in the car with me." They drove back to Eric's house. The other car was already there, and they told the others what had happened.[2] Titlow then testified, "[T]hey asked us if we got the weed and we said, 'Yeah.' So, we took the—it was paint buckets of weed and we took that into the house and then Tim and Russell left and me and Nicole waited there for (appellant) to show up or to see what had happened because we didn't know if he got shot or what." About an hour later, appellant arrived at the house. Appellant was real shaken up. His shoulder seemed to be out of joint, and he had a big rip in his pants. Titlow testified appellant told her that his gun went off and he thought someone had been shot in the foot. Appellant left the house about 10 minutes later, and Titlow left soon thereafter.

Robert Quintanilla, Sr. testified that he, his girlfriend, and Robert's 17–year old son, Robert Quintanilla, Jr., were asleep in their trailer home during the early morning of February 7, 1993. Robert Quintanilla, Sr. was awakened by noises outside. Three men

---

1. One of the other cars pulled over before they all left the neighborhood, so only one car continued to follow.

2. The other car of people apparently did not go to the trailer.

were at his front door, claiming to be with the Harris County Sheriff's Department.

Quintanilla testified that two of the men had shotguns, and the third had a pistol. The man with the pistol had light brown shoulder length hair, a moustache and beard, and a small scar on his face. He spoke a combination of Spanish and English. Quintanilla said that the man with the pistol went to the back room of the trailer house where his son, Robert Jr., was sleeping. The two men with shotguns took between two to four hundred dollars from Quintanilla. After taking his money, the two men forced Quintanilla and his girlfriend outside to find the marihuana. Quintanilla testified he had 30 pounds of marihuana on his property that had been brought there by a friend from the Valley. The marihuana was hidden in one of the old cars Quintanilla had parked in his front yard.

The two men took the marihuana from the back of the old car and loaded it into a greenish-blue car. Quintanilla testified that about that time, he heard a gunshot. Thinking his son had been shot, he ran back to the trailer house to get his gun. After he grabbed his gun, Quintanilla turned around and saw the man with the pistol facing him. The man tried to shoot Quintanilla, but his gun locked up. The man immediately fled, dropping his pistol along the way. Quintanilla shot at the fleeing man 14 times. At trial, Quintanilla did not recognize appellant, or anyone else in the courtroom, as being one of the robbers.

Officer Robert E. Brown of the Harris County Sheriff's Department testified that he found the discarded pistol later that same morning. The pistol was introduced into evidence. There was no fingerprint testimony or ownership evidence.

Robert Quintanilla, Jr. was shot in the side and had to be hospitalized for two days. Pretrial, Robert, Jr. could not positively identify appellant in a photo spread as having been involved in the robbery; he could only say appellant "looked familiar" and "possibly" was one of the men involved. Robert, Jr. did not identify appellant in a subsequent pretrial line-up. Robert, Jr. did not recognize appellant, or anyone else in the courtroom at trial, as being one of the robbers.

Nicole testified that the evening of February 6, 1993, she went out "clubbing, drinking" with appellant and Suzanne Titlow. After visiting a number of bars, she passed out in the back seat of a car. When she woke up, she did not know where she was. She saw Titlow in the front seat, and she saw Russell Meadors and Tim walking with some Hispanic people. She heard gunshots, and everyone started running. Russell and Tim got in the car and Titlow sped off. Nicole did not see appellant at any time after she woke up in the back seat. Nicole testified that the five years she had known appellant, she had never heard him speak Spanish, and she had never seen him with a beard.

Appellant, Russell Meadors, and Tim did not testify.

In point of error one, appellant asserts he was deprived of a fair and impartial trial because the trial court failed to instruct the jury that Titlow was an accomplice witness, and the State adduced insufficient corroboration.

■■■ An accomplice *as a matter of fact* is someone who has participated with the defendant before, during or after the commission of the crime and who can be prosecuted for the same offense with which the defendant is charged. *Ex parte Zepeda,* 819 S.W.2d 874, 875 (Tex.Crim.App.1991); *Kunkle v. State,* 771 S.W.2d 435, 439 (Tex.Crim. App.1986); *Ashford v. State,* 833 S.W.2d 660, 663 (Tex.App.—Houston [1st Dist.] 1992, no pet.). One who is (1) indicted for the same offense with which the defendant is charged, or (2) indicted for a lesser included offense based upon alleged participation in commission of the greater offense, is an accomplice *as a matter of law.* *Zepeda,* 819 S.W.2d at 876.

■■■ A witness does not become an accomplice merely because she knew about the

offense and failed to disclose it. *Kunkle*, 771 S.W.2d at 439–440. A witness' presence at the scene, during the commission of the crime, is insufficient, standing alone, to make her an accomplice witness. *Creel v. State*, 754 S.W.2d 205, 214 (Tex.Crim.App.1988). Furthermore, a witness' complicity with the accused in the commission of another crime does not make her an accomplice to the offense for which the accused stands trial. *May v. State*, 618 S.W.2d 333, 340 (Tex.Crim. App.1981). An accomplice witness is someone who played an affirmative role in the commission of a crime for which the accused is being prosecuted. "[T]here must be some evidence of an affirmative act on the witness' part to assist in [the] commission of the offense." *Kunkle*, 771 S.W.2d at 440.

■ When the evidence clearly shows that the witness is an accomplice witness as a matter of law, the trial court has a duty to so instruct the jury. *Arney v. State*, 580 S.W.2d 836, 839 (Tex.Crim.App.1979). If there is doubt about whether a witness is an accomplice witness, the trial court may submit the issue to the jury even though the evidence weighs in favor of the conclusion that the witness is an accomplice as a matter of law. *Kunkle*, 771 S.W.2d at 439.

In the present case, the indictment charged appellant with aggravated robbery, alleging that appellant

> while in the course of committing theft of property owned by Robert Quintanilla, Jr., and with intent to obtain and maintain control of the property, intentionally and knowingly threatened and placed Robert Quintanilla, Jr. in fear of imminent bodily injury and death, and (appellant) did then and there use and exhibit a deadly weapon, to wit: a firearm.

There is evidence in the record that Titlow did not act with the requisite intent to promote or assist appellant in the commission of the offense. The evidence shows that Titlow was drunk and high on drugs. She waited in the car with Nicole while appellant was in the house planning the robbery. There is no evidence Titlow participated in the planning. When appellant came out of the house with some people Titlow did not know, appellant told Titlow and Nicole he was "going to get some weed," and asked if they wanted "to go with him." Although Titlow went with appellant to the trailer park with the understanding that they were going to get marihuana, a jury could reasonably conclude she was not aware appellant planned to *steal* the marihuana rather than purchase it. Titlow testified that the marihuana was loaded into the car before the victims were led out of the trailer at gunpoint. When Titlow heard the gunshot from inside the trailer, she rushed to drive the car away, not waiting for appellant, and not even waiting for Meadors and Tim to get in—she picked Meadors and Tim up when she saw them down the road as she drove away. Although Titlow helped take the marihuana out of the car when they returned to Eric's house, there is no evidence that Titlow consumed or shared in any of the stolen marihuana.

■ Because there is evidence that there was no common understanding to commit robbery, and there is evidence that Titlow did not act with the requisite criminal intent to commit robbery, her participation did not make her an accomplice as a matter of law. *See Kunkle*, 771 S.W.2d at 439 (witness not an accomplice to murder even though he stayed with the group knowing of prior robbery that night, knowing that the group was looking for another robbery victim, and knowing a member of the group had a loaded gun); *Creel*, 754 S.W.2d at 214 (appellant did not prove the alleged accomplice witness had any knowledge of the murder soon to transpire); *Caraway v. State*, 550 S.W.2d 699, 702–703 (Tex.Crim.App.1977) (appellant made no showing that witness participated in planning or promoting the offense); *Carrillo v. State*, 591 S.W.2d 876, 883 (Tex.Crim.App. 1979) (a witness' complicity with the accused in the commission of *another* offense does not make his testimony that of an accomplice to the offense for which the accused is on trial). Further, nothing in the record indicates that Titlow was indicted or convicted of

aggravated robbery, or any lesser included offense.[3]

Alternatively, appellant argues the evidence raised a *fact issue* about whether Titlow was an accomplice.

The evidence shows that Titlow drove appellant and others to the scene of the robbery, and she was to drive the car when they were ready to leave the scene. There is evidence through the testimony of Quintanilla, Sr., that when Titlow pulled up to the trailer, Russell Meadors and Tim were outside holding Quintanilla, Sr. and his girlfriend at gun point. Titlow pulled into the driveway, and the marihuana was loaded into the back seat. Thereafter, Titlow hurriedly drove away from the scene with several of the people who had accompanied her and appellant to the scene.

■ As already noted, an accomplice as a matter of fact is someone who has participated with the defendant before, during, or after the commission of the crime, and who can be prosecuted for the same offense with which the defendant is charged. *Zepeda,* 819 S.W.2d at 875. The issue, then, is whether there is sufficient evidence to support prosecuting Titlow for this offense. The Texas Court of Criminal Appeals and this Court have held that evidence that a defendant drove the getaway car in a robbery is sufficient to support a conviction of that defendant for that robbery. *Thompson v. State,* 697 S.W.2d 413, 417 (Tex.Crim.App.1985); *Webber v. State,* 757 S.W.2d 51, 54 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd). Here, not only did Titlow drive the getaway car, the jury could have concluded from the evidence that Titlow saw Russell and Tim pointing shotguns at the victims before she pulled into the driveway, indicating she was aware a robbery was in progress before the marihuana was loaded into the car. Therefore, there was at least a fact issue raised as to whether Titlow was an accomplice, and appellant was entitled to a jury instruction

with respect to that issue, upon request. *Kunkle,* 771 S.W.2d at 439; *Harris v. State,* 645 S.W.2d 447, 459 (Tex.Crim.App.1983); *Sample v. State,* 644 S.W.2d 225, 227–28 (Tex.App.—Fort Worth 1982, no pet.).

■ In the present case, appellant did not request, or object to the absence of, an accomplice witness instruction in the charge. Therefore, to be entitled to a reversal, appellant must show that the absence of an accomplice witness instruction resulted in fundamental error, or "egregious harm," i.e., that the omission was so harmful that appellant was denied a "fair and impartial trial." *Saunders v. State,* 817 S.W.2d 688, 690, 692 (Tex.Crim.App.1991); *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984); *Turner v. State,* 721 S.W.2d 909, 912 (Tex.App.— Houston [1st Dist.] 1986, pet. ref'd).

■ Article 38.14 of Texas Code of Criminal Procedure states that "a conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX.CODE CRIM.PROC. ANN. art. 38.14 (Vernon 1979). The test to determine the sufficiency of the corroboration is to "eliminate from consideration the evidence of the accomplice witness and then examine the testimony of other witnesses to ascertain if there is inculpatory evidence which tends to link the accused with the commission of the offense." *Adams v. State,* 685 S.W.2d 661, 667–68 (Tex.Crim.App.1985).

■ It is not necessary that the corroborative testimony directly link the accused to the crime. *James v. State,* 538 S.W.2d 414, 416 (Tex.Crim.App.1976). Nor must the testimony be sufficient, standing alone, to establish the accused's guilt. *Id.* The corroborative evidence is sufficient if it tends to connect the accused with the crime, and it is the cumulative weight of such evi-

---

**3.** Although Titlow testified that she was taken into custody some time after the robbery and was later placed in a drug program, there is no

evidence showing she was charged in connection with the offense with which appellant was charged and convicted.

dence that supplies the test. *Reed v. State,* 744 S.W.2d 112, 126 (Tex.Crim.App.1988). Evidence proving that the accused was at the scene of the crime at the time of the commission of the offense may be sufficient, coupled with other circumstances, to corroborate the accomplice witness' testimony. *Adams,* 685 S.W.2d at 667; *Mitchell v. State,* 650 S.W.2d 801, 807 (Tex.Crim.App.1983).

█ In the present case, if we totally ignore Titlow's testimony, we find insufficient evidence to link appellant with the commission of the offense. The victims, Robert Quintanilla, Sr. and Robert Quintanilla, Jr., could not positively identify appellant as being one of the robbers. Robert Quintanilla, Sr. described the man who robbed his son as bearded and partly Spanish speaking. According to Nicole, appellant did not have a beard or speak Spanish. Nicole testified that appellant was present earlier in the evening; however, she passed out in the back of the car and did not see appellant thereafter during the evening. The other actors allegedly involved did not testify. There was no physical evidence connecting appellant to the scene of the robbery. Titlow's testimony alone inculpates appellant.

We conclude that, because the jury could have concluded from the evidence that Titlow was an accomplice, and because hers is the only testimony linking appellant to the crime, the absence of an accomplice witness issue in the jury charge constitutes egregious error that effectively denied appellant a fair trial. *See Saunders,* 817 S.W.2d at 692. Accordingly, we sustain appellant's point of error one.

In light of our ruling on point of error one, it is unnecessary for us to reach the merits of appellant's second point of error alleging ineffective assistance of counsel, and we decline to do so.

We reverse the judgment and remand the case to the trial court.