**Gene Auther TAYLOR, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 14–97–01325–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 18, 1999.

Lonnie Knowles, Houston, for appellants.

Rikke Burke Graber, Houston, for appellees.

Panel consists of Justices YATES, FOWLER, and DRAUGHN.[*]

## OPINION

WANDA McKEE FOWLER, Justice.

Over his plea of not guilty, a jury found appellant, Gene Auther Taylor, guilty of capital murder. *See* TEX. PEN.CODE ANN. § 19.03 (Vernon 1989 & Supp.1994). The jury assessed punishment at life imprisonment in the Texas Department of Criminal Justice, Institutional Division. Appellant appeals his conviction on six points of error. For three reasons, we affirm the judgment of the court below: (1) we find no egregious error in the jury charge; (2) we find no evidence that appellant is guilty only of a lesser offense of capital murder; (3) we find no error in allowing a transcription of appellant's video statement into evidence. However, we also reform the judgment because the trial court improperly entered an affirmative deadly weapon finding.

## FACTUAL BACKGROUND

Appellant, Frank Vasquez, and Jose Cuellar met to make plans to invade Juan Treviño's home. They knew Treviño sold marijuana from his house, so they expected him to have marijuana and money. The men met at the apartment of Jessie Moreno, who told them that drugs were indeed inside Treviño's house, and that he could show them where the house was located. They decided to meet again at a pool hall just before the invasion.

After gathering at the pool hall, Moreno gave everyone instructions on their roles for the home invasion. The men followed one another in separate cars and drove to Treviño's house. When they arrived, appellant and his friends jumped out of the cars, approached the front door, and kicked it open. Appellant had a handgun, while each of the other men were either carrying a handgun or a shotgun. Treviño, his wife Grace, her brother, Marcus Guerrero, and her daughters were all inside the house at the time.

Appellant pulled Treviño off of the bed and punched and kicked him in the face. After repeatedly demanding the marijuana and making threats, someone fired a gunshot. Grace saw appellant standing over her husband immediately before she heard

---

[*] Senior Justice Joe L. Draughn sitting by assignment.

the gunshot. Also, shortly after the shot, her brother felt someone jump over him, rummage through a closet, and then shoot him in the back as he was leaving. All of the men then jumped back into their vehicles and drove away. Appellant met his friends later that night at a gas station and had this to say about shooting Treviño, "The man flinched, and I shot him."

Meanwhile, the police arrived at the scene and found Treviño lying on the floor with a fatal gunshot wound fired from close-range. Later, a firearms expert inspected the bullets taken from Treviño and from Grace's brother, and determined that they were fired from the same gun. After some investigation, an officer arrested appellant in his apartment pursuant to a warrant.

At trial, appellant testified in his own defense. He asserted that he never went inside Treviño's house. Instead, he insisted that he followed the men to the house, but drove away when he doubted their intentions.

The jury found appellant guilty of capital murder as charged in the indictment and sentenced him to life in prison. An affirmative deadly weapon finding was entered on the judgment. Appellant now appeals his conviction on six points of error.

## DISCUSSION AND HOLDINGS

### Objections to the Jury Charge

In his first point of error, appellant contends that the trial court erred in overruling his objection to the definition of the term, "conspiracy" in the jury charge. On appeal, appellant contends that the definition of the term, "conspiracy" in the charge does not comport with its statutory definition.[1] He argues that the definition does not include language requiring that the conspiring parties have the intent to commit a felony offense.[2] However, at trial, when objecting to the charge, appellant did not make this objection. At trial he stated, "We are objecting to any language in the charge starting on page three continuing through four and five which refers to a conspiracy or parties. We object to those three pages." Thus, at trial, appellant informed the court that he did not want the charge to contain any reference to conspiracy or party law. Here, rather than complaining that the charge contained a charge on conspiracy and parties, he complained that the charge language on conspiracy deviated from the statutory language. Clearly, the trial objection is different from the objection on appeal.

To preserve jury charge error on appeal, a party must object to any alleged error within the charge at the time of the trial. TEX.CODE CRIM. PROC. ANN. art. 36.19 (Vernon Supp.1999). A party must make a timely and proper objection at the time of trial to preserve error for appeal. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1985)(en banc), *aff'd*, 724 S.W.2d 805 (Tex.Crim.App.1986). A proper objection must distinctly specify the error, so that the trial court may have an opportunity to correct any defect. TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon Supp.1999); *see Brown v. State*, 716 S.W.2d 939, 943 (Tex.Crim.App.1986)(en banc). If a party does not properly object, or makes an objection on appeal that was not made at trial, we apply a different standard than if error was preserved. *See Almanza*, 686 S.W.2d at 171.

---

1. The definition in TEX. PEN.CODE ANN. § 15.02(a) (Vernon Supp.1999) provides:

   A person commits criminal conspiracy if, with intent that a felony be committed: (1) he agrees with one or more persons that they or one or more of them engage in conduct that would constitute the offense; and (2) he or one or more of them performs an overt act in pursuance of the agreement.

2. The paragraph in the charge to which appellant objects reads:

   By the term "conspiracy" as used in these instructions, is meant an agreement between two or more persons with intent, that they or one or more of them, engage in conduct that would constitute the offense. An agreement constituting a conspiracy may be inferred from acts of the parties.

In that case—when appellant's complaint on appeal regarding the charge is different than at trial—we treat the objection on appeal as if it was made for the first time. *See Id.* We look at the error in the submission of the charge to determine if it constitutes fundamental error. To constitute fundamental error, the error must be so egregious and create such harm that the appellant did not receive a fair and impartial trial, *see id;* it "must go to the very basis of the case." *Id.* at 172.

To determine if error was fundamental, the actual degree of harm must be evaluated in "light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole." *Almanza,* 686 S.W.2d at 171. Reviewing the record in this light determines the actual, not just theoretical, harm to the appellant. *See Id.* at 174.

Here, when we review the charge as a whole, we find the trial court instructed the jury on the statutory requirement that the parties must intend to commit a felony offense. Immediately preceding appellant's cited paragraph, the court instructs the jury on the general definition of conspiracy.[3] This paragraph specifies that one must conspire to commit a felony. Consequently, when both paragraphs are read contemporaneously, they require that a conspirator must engage in conduct that would result in a felony. Moreover, in the charge's application paragraph, the court instructed the jury that it must find that the appellant entered into an agreement to commit the felony offense of robbery.[4]

Because the charge as a whole properly instructed the jury on conspiracy, appellant received a fair and impartial trial, and any error was not egregious error. We overrule appellant's first point on appeal.

In his second point of error, appellant contends that the trial court submitted an erroneous accomplice-witness instruction. In the charge, the trial court included a paragraph that instructed the jury on the testimony of accomplice-witnesses.[5] This instruction tracks the language of Article 38.14 of the Texas Code of Criminal Procedure, however, appellant argues that it is erroneous since it fails to give additional instructions that case law requires. Appellant argues that the instruction is incomplete and inaccurate for three reasons: (1) it fails to define the term, "accomplice," (2) it fails to advise the jury that Frank Vasquez and Jose Cuellar were accomplice witnesses, and (3) it does not instruct the jury that accomplice-witnesses cannot corroborate each other. We agree with appellant's second and third complaints: the charge was deficient because (1) it did not inform the jury that Vasquez and Cuellar were accomplice witnesses and (2) it did not instruct the jury that accomplice-witnesses cannot corroborate each other. *See Harris v. State,* 645 S.W.2d 447, 454 (Tex.Crim.App.1983)(holding that when the evidence clearly shows a witness is an accomplice as a matter of law, the trial court must so instruct the

3. The preceding paragraph provides:

   If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

4. The application paragraph provides:

   Before you would be warranted in finding the defendant guilty of capital murder, you must find from the evidence beyond a reasonable doubt ... that on the occasion in question the defendant entered into an agreement ... to commit the felony offense of robbery....

5. The paragraph in the charge reads:

   You are further instructed that a conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

jury); *See Chapman v. State,* 470 S.W.2d 656, 660 (Tex.Crim.App.1971)(holding that one accomplice witness cannot corroborate the testimony of another accomplice witness). Appellant did not raise this objection at trial and, therefore, we reverse only if we find egregious harm. *See Almanza,* 686 S.W.2d at 171.

■ To determine if the error was fundamental, we look at the testimony from the trial. Because Vasquez and Cuellar are accomplices, their testimony must be sufficiently corroborated. *See Adams v. State,* 685 S.W.2d 661 (Tex.Crim.App. 1985); *Mize v. State,* 915 S.W.2d 891, 896 (Tex.App.-Houston [1st Dist.] 1995, pet. ref'd). To determine the sufficiency of corroboration, whether an objection was made or not, we eliminate the testimony of the accomplice witnesses and examine the testimony of the other witnesses. *See Adams,* 685 S.W.2d at 667–68; *Mitchell v. State,* 650 S.W.2d 801, 806 (Tex.Crim.App. 1983). From this testimony, we determine if evidence of incriminating character tends to connect the defendant with the commission of the offense. *See Mitchell,* 650 S.W.2d at 806; *Mize,* 915 S.W.2d at 896.

■ The corroborative testimony does not need to directly link the appellant to the crime, nor does it have to independently establish his guilt. *See Mize,* 915 S.W.2d at 896. Normally, it is sufficient if the cumulative weight of the corroborative evidence tends to connect the appellant with the crime. *Id.* In applying this test of sufficiency, the court must consider each case on its own facts and circumstances. *See Reed v. State,* 744 S.W.2d 112, 126 (Tex.Crim.App.1988); *Ashford v. State,* 833 S.W.2d 660 (Tex.App.-Houston [1st Dist.] 1992, no pet.).

■ When we are looking for egregious error, as in this case, the corroborating evidence must be so weak and unconvincing that, had they been properly instructed, rational jurors would find the State's case significantly less persuasive. *See Saunders v. State,* 817 S.W.2d 688, 692 (Tex.Crim.App.1991)(en banc); *How-*

*ard v. State,* 972 S.W.2d 121 (Tex.App.-Austin 1998, no pet.). In this case, if we view the evidence as a whole and disregard testimony from Frank Vasquez and Jose Cuellar, we find much evidence to link appellant with the commission of the offense. Grace Treviño identified appellant as the man who repeatedly kicked her husband, Juan, and stood over him with a gun immediately before she heard the gunshot that caused his death. The autopsy report showed that Juan Treviño died from a close-range gunshot wound. Marcos Guerrero also testified that appellant was present at the Treviño's house on the day of the offense. In addition, a ballistics expert testified that the bullets found in Marcos Guerrero and Juan Treviño were fired from the same weapon, namely the type of weapon appellant carried into the house.

This evidence—the testimony of Grace Treviño, Marcos Guerrero, and the ballistics expert—tend to connect appellant to the murder of Juan Treviño; it sufficiently corroborates Frank Vasquez's and Jose Cuellar's testimony. Even if the jury had been given the statutory instruction verbatim, it would not have found "the corroborating evidence so unconvincing as to render the State's overall case clearly and significantly less persuasive." *Saunders,* 817 S.W.2d at 692. We hold, therefore, that the trial court's failures discussed under this point do not constitute egregious error. Accordingly, we overrule appellant's second point of error.

### Lesser Included Offenses

■ In appellant's third point on appeal, he contends that the trial court erred in denying his request to include in the jury charge the lesser included offenses of aggravated robbery, robbery, and aggravated assault. Appellant argues that the facts introduced at trial support the inclusion of an instruction on these offenses. We disagree.

■ A trial court is required to submit a jury charge on a lesser included offense

only if both prongs of a two prong test are satisfied. *See Moore v. State*, 969 S.W.2d 4, 8 (Tex.Crim.App.1998). First, the lesser included offense must be included within the offense charged. *See id.* Secondly, some evidence in the record must establish that if the defendant is guilty, he is guilty of only the lesser offense. *See id.*

Appellant meets the first prong of the test because aggravated robbery, robbery, and aggravated assault are each lesser included offenses of capital murder.

However, appellant cannot satisfy the second prong of the test because no evidence in the record supports a finding that if he was guilty, he was guilty only of a lesser offense. The evidence is undisputed that a shooting occurred, and that Juan Treviño died from a close-range gunshot wound. Evidence at trial directly connects appellant with the bullet found in Treviño. Appellant relies on the testimony of Frank Vasquez and on the testimony of Grace Treviño to support his assertion that relying on this testimony, if he is guilty he is guilty only of the lesser included offenses. Appellant's reliance on this testimony is misplaced.

First, we turn to Vasquez's testimony. It does three things: it (1) places appellant at the scene of the offense, (2) reveals that appellant gave Vasquez a shotgun, and (3) places appellant inside the house.

Under Vasquez's testimony, appellant would be guilty—as a party—of the offense of capital murder. *See Russell v. State*, 598 S.W.2d 238, 249 (Tex.Crim.App. 1980)(en banc)(holding that a party to an offense must be prosecuted for the offense with which the principal is charged). The jury was instructed on the law of parties.[6] Therefore, on the basis of Vasquez's testimony, appellant would not be guilty of anything less than capital murder because

the state proved that the only crime committed in the Trevino house was a capital murder and not an aggravated robbery, robbery, or aggravated assault. So even if there was no testimony showing that appellant was the shooter, as a party, he would still be guilty of capital murder because he was in the house.

Neither does Treviño's testimony support the submission of the lesser included offenses. Although she did not actually see him pull the trigger, Treviño saw him standing over her husband immediately before he was shot. Thus, under Treviño's testimony, appellant was the principal actor, not merely a party, and certainly not guilty only of a lesser offense.

In short, the testimony that appellant relies on does not show that appellant, if guilty, was guilty only of the lesser included offenses of aggravated robbery, robbery, or aggravated assault. Consequently, the court did not err when it refused to submit a charge on the lesser included offenses. We overrule appellant's third point of error.

### Comment on the Weight of the Evidence

In appellant's fourth point of error, he asserts that the trial court erred because it included in the jury charge a comment on the weight of the evidence. Specifically, appellant urges that the term, "murder" as used in the charge, is an impermissible comment on the weight of the evidence. Appellant did not timely object at trial, therefore, as we discussed earlier, we can reverse only if we find egregious harm.

In its charge to the jury, the trial court may not express an opinion on the weight of the evidence, sum up the

---

6. The instruction in the jury charge provides: Before you would be warranted in finding the defendant guilty of capital murder, you must find from the evidence beyond a reasonable doubt ... that the defendant, acting as a party as defined in the charge, with the intent to promote or assist the commission of the offense of robbery of Juan Treviño, if any, solicited, encouraged, directed, aided, or attempted to aid Frank Vasquez and/or Jose Cuellar and/or Jesse Moreno and/or two unknown persons in the shooting of Juan Treviño ...

testimony, discuss the facts, or use any argument calculated to arouse the sympathy of the jury. *See Posey v. State*, 840 S.W.2d 34, 40 (Tex.App.-Dallas 1992, pet. ref'd). If a court included inflammatory words, such as "murder," in a jury charge, it can be error if not accompanied by limiting language. *See Miller v. State*, 753 S.W.2d 473, 476 (Tex.App.-Houston [1st Dist.] 1988, pet. ref'd)(holding that the use of the word "murder" in the jury charge was not a harmful comment on the weight of the evidence because the court included limiting language "if any"); *Talkington v. State*, 682 S.W.2d 674, 675 (Tex.App.-Eastland 1984, pet. ref'd)(holding that the use of word "victim" in rape charge was an improper comment on the weight of the evidence because the sole issue was whether plaintiff consented to sexual intercourse). The fear is that, without limiting language, the jury will presume that the defendant committed a murder; the jury will assume the truth of a controverted issue. *See Stern v. State ex rel. Ansel*, 869 S.W.2d 614 (Tex.App.-Houston [14th Dist.] 1994, pet. denied) quoting *McDonald Transit, Inc. v. Moore*, 565 S.W.2d 43 (Tex.1978)(holding that a prohibited comment occurs when a question is worded so that the trial court expresses an opinion as to the truth or accuracy of the disputed facts). However, if limiting language is used, the jury will not presume that a murder was committed. *See Booth v. State*, 635 S.W.2d 767, 771 (Tex.App.-Corpus Christi 1982, no pet.)(holding that a modifying clause precludes the terms "murder" and "guilty" from assuming the truth of a controverted fact). Here, the charge uses the term murder without any limiting language such as, "if any." The disputed paragraph in the charge reads as follows:

... if you find from the evidence beyond a reasonable doubt that on the occasion in question the defendant entered into an agreement with Frank Vasquez and/or Jose Cuellar and/or Jesse Moreno and/or two unknown persons to commit the felony offense of robbery of Juan Treviño, as alleged in the charge, and pursuant to that agreement they did carry out their conspiracy, and while in the course of committing said conspiracy, Frank Vasquez and/or Jose Cuellar and/or Jesse Moreno and/or two unknown persons intentionally caused the death of Juan Treviño by shooting Juan Treviño with a deadly weapon, namely a firearm, and the *murder* of Juan Treviño was committed in furtherance of the conspiracy and was an offense that should have been anticipated by the defendant as a result of carrying out the conspiracy, unless you so find, then you cannot convict the defendant of the offense of capital murder. (emphasis added)

Even though this charge does not use limiting language, we find no egregious harm. We find no egregious harm because the trial court's use of the word "murder" does not comment on the weight of the evidence; specifically, it does not assume the truth of a controverted issue. When a complaint is made that the charge comments on the weight of the evidence, we review the "charge as a whole rather than as a series of isolated statements." *Almanza*, 686 S.W.2d at 171. In this charge, "murder" functions merely as an explanatory phrase. The application paragraph just preceding the use of the term instructs the jury that the charged offense consists of actions that "intentionally caused the death of Juan Treviño by shooting him with a deadly weapon." It required the jury to determine whether appellant "intentionally caused the death of Juan Treviño by shooting him with a deadly weapon;" only after making that finding, was the jury to consider whether the offense was committed as part of a conspiracy. In short, the contested paragraph applies what the jury was required to find in the application paragraph. And, since the term had already been statutorily defined for the jury, the trial court did not express an opinion on the evidence or assume the truth of a controverted issue. Thus, based on a review of the entire charge and the testimony as discussed above, we find no

egregious harm and overrule appellant's fourth point of error.

### Written Transcript as Evidence

In his fifth point of error, appellant maintains that the trial court erred in admitting into evidence the written transcript of the audio portion of his video statement. Again, we disagree.

Appellant alleges error because the written statement purportedly did not comply with Article 38.22 of the Texas Code of Criminal Procedure. Article 38.22 sets out the parameters for when an accused's statement may be used against him. Before an oral statement can be used, the article requires the following: (1) an electronic recording must be made; (2) before the statement, but during the recording, the accused must be admonished as to his rights to remain silent, to have counsel, to terminate the interview, to have counsel present at the interview, and to have an examining trial; (3) a predicate must be laid to show that the recording device was functioning, the recording is accurate and unaltered and the operator competent; (4) the voices on the tape must be identified; and (5) the accused must be provided with a copy at least twenty days before trial.

Although appellant challenges the written statement on the basis of Article 38.22, he does not assert any violations of Article 38.22 such as involuntariness, coercion, lack of warnings on the original statement, or an inaccurate transcription of the audio tape. Case law interpreting Article 38.22 has held that as long as the confession is voluntary, law officers are permitted to reduce defendant's oral statements into writing, and are even allowed to paraphrase the statements. *See Heiselbetz v. State*, 906 S.W.2d 500, 512 (Tex.Crim.App. 1995)(en banc). As long as the warnings appear on the written statement, it is ad-

missible. *See Id.* Here, the record reflects that all the statutorily required warnings were read on the audio tape. Also, the record reflects that the written exhibit was a verbatim transcription of the audio tape. Consequently, we hold that the trial court did not err in allowing the transcription into evidence, and we overrule appellant's fifth point of error.

### Deadly Weapon Finding

In his last point of error, appellant argues that the trial court erred in entering an affirmative deadly weapon finding in the judgment. We agree and sustain this point.

The appellant elected to have the jury assess punishment. The trial court's charge instructed the jury on the law of parties;[7] however, the court did not present a special issue to the jury asking it to decide if appellant used or exhibited a deadly weapon. An affirmative deadly weapon finding was entered by the judge, but it does not specifically state that appellant knew that a deadly weapon would be used or that he personally used or exhibited one. Instead, the word, "yes" is circled under the phrase "deadly weapon" and is on a pre-printed form containing a section entitled, "Affirmative Findings."

In certain circumstances, a trial court may properly enter an affirmative finding on the use of a deadly weapon. It may do so when the jury affirmatively answers a special issue on the use of a deadly weapon. *See Davis v. State*, 897 S.W.2d 791, 793 (Tex.Crim.App.1995). However, when the jury is instructed on the law of parties, the jury must expressly state that appellant either used or exhibited a deadly weapon or knew that one would be used, or exhibited one during the

---

7. The instruction in the jury charge provides: Before you would be warranted in finding the defendant guilty of capital murder, you must find from the evidence beyond a reasonable doubt . . . that the defendant, acting as a party as defined in the charge, with the intent to promote or assist the commission

of the offense of robbery of Juan Treviño, if any, solicited, encouraged, directed, aided, or attempted to aid Frank Vasquez and/or Jose Cuellar and/or Jesse Moreno and/or two unknown persons in the shooting of Juan Treviño . . .

commission of the offense. *See Pritchett v. State,* 874 S.W.2d 168, 172 (Tex.App.-Houston [14th Dist.] 1994, pet. ref'd); *Mulanax v. State,* 882 S.W.2d 68, 71 (Tex. App.-Houston [14th Dist.] 1994, no pet.). Generally, when the jury assesses punishment and has been instructed on the law of parties, the court may not itself enter a finding that a deadly weapon was used. *See Mulanax,* 882 S.W.2d at 71.

Here, we cannot tell whether the jury convicted the appellant as a party or as a principal. If the jury convicted appellant as a party, we have no way of knowing from this record if the jury would have found that appellant knew that a deadly weapon would be used or exhibited or that he used one himself since the jury did not make that finding. The affirmative finding in the judgment must be deleted.

Appellant's last point of error is sustained, and the judgment of the court below is affirmed as reformed.