EMORANDUM OPINION 






COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
DERRICK CLAY JOHNSON,                           )                  No. 08-03-00466-CR
)
                                    Appellant,                        )                  Appeal from
)
v.                                                                          )                  Criminal District Court No. 5
)
THE STATE OF TEXAS,                                   )                  of Dallas County, Texas
)
                                    Appellee.                          )                  (TC# F-0300647-HL)

OPINION

            Derrick Clay Johnson appeals his conviction by a jury of the offense of aggravated robbery. 
The jury found an enhancement paragraph to be true and assessed his punishment at sixty years in
the Texas Department of Criminal Justice, Institutional Division. He asserts in eight points that the
evidence is legally and factually insufficient to support his conviction and that the trial court erred
by: failing to apply the law of parties to the facts of the case; failing to properly limit the relevant
conduct elements in the jury charge; providing the jury with a definition of reasonable doubt;
commenting on the weight of the evidence by instructing the jury that intent may be inferred from
acts done, words spoken, or both; and by including a deadly weapon finding in the judgment. We
affirm.
            Johnson asserts in points one through three that the evidence is legally and factually
insufficient to support his conviction. In a legal sufficiency review, we view all of the evidence in
the light most favorable to the verdict and then determine whether a rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443
U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). In a factual sufficiency review, we view all
of the evidence in a neutral light, and we will set the verdict aside only if the evidence is so weak that
the verdict is clearly wrong and manifestly unjust, or the contrary evidence is so strong that the
standard of proof beyond a reasonable doubt could not have been met. See Zuniga v. State, 144
S.W.3d 477, 484-85 (Tex.Crim.App. 2004). 
            Raymond David Prengaman testified that on July 12, 2002, he met several members of his
brokerage firm at a restaurant in Dallas because a fellow employee was leaving to attend law school. 
He said he got there between 8:30 and 9:00 p.m., staying around two hours or more before leaving. 
He stated that he left the restaurant with Mari, the complainant, Adriel and Kirk, who were three
fellow employees. He indicated that Adriel decided to walk Mari to her car. He related that after
Kirk left he got in his car and drove around to meet Mari and Adriel.
            Prengaman later referred to Mari as Ms. Castilla and to Adriel as Mr. Rojas. He testified that
he pulled into the parking spot next to that of Ms. Castilla. He described the area as fairly well lit. 
He related that there were streetlights and that he seemed to remember that the building they were
parked in front of had a light coming off of it. He said that Mr. Rojas and Ms. Castilla were standing
near her car. He indicated that he stayed in his car and talked with them for a few minutes. He
recalled that as he was getting ready to leave, Mari said, “Wait just a second.” He indicated that as
she said that, he turned and saw “three guys coming around the corner of one of the buildings there.” 
He stated that they seemed to be together.
            Prengaman testified that he noticed one of them lifting up his shirt and pulling a gun out of
his waistband. He related that one of them went to Mari, one of them went to Adriel, and one of
them came up to him and put a gun in his shoulder, yelling at him to get out of the car. He stated
that when he started to get out of the car, he took his foot off the brake and the car was rolling
backwards. He said that the man was yelling, “Turn off the car. Stop.”
            He said that the man put the gun to his head and was pushing his head to the side, yelling at
him to stop. He stated that the man reached in with the gun in his hand to turn his car off. He
acknowledged that while all of this was going on he was not paying any attention to what might have
been going on with Ms. Castilla and Mr. Rojas. He stated that after the man reached in to turn the
car off, he pulled his hand back very quickly. He said that when the man pulled his hand back, he
turned and backed his car up the street. He insisted that the firearm pointed at him appeared to be
real.
            He stated that he could see that there was a person confronting Mr. Rojas, but he could not
tell whether that person had a weapon. He did indicate that Mr. Rojas had his hands in the air and
that it appeared that something was being pointed at him. He acknowledged that he did not know
if the person confronting Ms. Castilla had a weapon. He indicated that the persons who confronted
him and Ms. Castilla were both black males. He was unable to make any identification in court of
any of the three individuals. He also indicated that he was not able to make any identification from
a photographic lineup. 
            Prengaman testified that just before getting into a getaway car, Mr. Rojas’s assailant
motioned for him to go. He said it looked like the assailant had a gun in his hand. He described the
car that Mr. Rojas’s assailant escaped in as a blue car, but indicated that he did not know what kind. 
He stated that there were more than two passengers in the car before Mr. Rojas’s assailant got in.             Adriel Rojas testified about walking Ms. Castilla to her car after the party on July 12, 2002. 
He indicated that as he turned around to go to his car, Ms. Castilla said, “Wait.” He indicated that
at that time he saw three African-American males approaching him on foot. He said that they were
about the same distance away as the counsel table was from the witness stand. He said one person
who continued to come towards him had a gun in his hand. He stated that the man came and put the
gun on the side of his body, and said, “Give me your money.” He related that he put his hands up. 
He indicated that he gave the man his wallet and cell phone.
            He said that when he saw Ms. Castilla, someone was pulling her purse. He related that while
Ms. Castilla fought back a little bit, the man got the purse and started running. He indicated that he
could not tell if the person who got Ms. Castilla’s purse had a gun, acknowledging that he did not
see one. He insisted that he did not get a good look at the man who took Ms. Castilla’s purse. Rojas
also stated that in his peripheral vision he saw someone pointing a gun at Prengaman’s head. He said
that the man who assaulted him was not the same man who assaulted Prengaman. He acknowledged
that he could not identify anyone from a photographic lineup displayed by a police detective. He was
not able to identify Johnson as one of the robbers. He identified several items, such as his student
ID, a bank card, his calling card, his gas card, dental insurance card, health insurance card, and his
driver’s license as items that were contained in his wallet at the time of the robbery. He said that he
believed the gun was real, but that he could not say absolutely that it was. Rojas said that a woman
was driving a blue car in which his assailant escaped. He stated that it looked like a blue Escort.
            Maricella Castilla, who said that she sometimes goes by the name of Mari, testified that Mr.
Rojas accompanied her to her parking spot after the party and that Mr. Prengaman drove up and
parked shortly after she arrived at her space. She said as the other two were about to leave, she saw
three men coming on foot, walking side by side. She stated that when she saw them, she asked the
other two to wait until they passed. She acknowledged that she did not see if they were carrying
anything in their hands. She stated that one guy pushed her really hard in her chest and grabbed her
purse. She indicated that she thought it was a gun that hit her in the chest, although she did not see
one. She said that she got a good look at her assailant’s face. She identified Johnson as the person
who assaulted her and grabbed her purse. She insisted that once her assailant had gone, she observed
Mr. Rojas being accosted. She said Mr. Rojas’s assailant had a weapon. She heard his assailant say,
“Give me your money,” and could hear Mr. Rojas saying, “Please, don’t shoot.” She said that when
she looked over at Mr. Prengaman as he had his car in reverse, she could see someone following
along with him, with a gun in his hand. She stated he was holding the gun at Prengaman’s head, and
that it appeared to be a real gun. She indicated that she had no doubt about the guns being real. She
testified that she was positive that the person who attacked Prengaman was not the same as the man
who attacked Mr. Rojas.
            Castilla testified that she was able to identify a photograph from a set of photographs shown
to her by a police detective. She identified two credit cards, her social security card, her insurance
card, and a driver’s license, produced in court, as items that had been in her purse. She said that she
had not given Johnson consent to take these items from her. She said that she felt in fear of
imminent serious bodily injury, even death. She described the getaway car as a black or blue Escort. 
On cross-examination, Castilla repeated that she could not say Johnson had a gun. She also
indicated that it was dark at the scene, but there were streetlights and a light up on a building.             Daniel Jackson, a loss prevention investigator for Gap, Incorporated, testified that on July 15,
2002, he observed three men and one woman shopping together whom he suspected were about to
shoplift items from the Old Navy store where he was working. He said he started observing them
after he had first seen one of them sitting in a blue car outside the store. He said that the car was
similar in appearance to a Ford Escort. He related that after Johnson shoplifted items from the store,
Johnson, the woman, and Christopher Anderson were arrested. He stated that he did not know what
happened to the other male.
            Stephen Birk, a detention officer for the City of Mesquite, testified that when he booked the
three into jail, he recovered property belonging to Maricella Castilla, including her credit card, and
property belonging to Mr. Rojas, including his AT&T Student Advantage card, in Christopher
Anderson’s wallet. Jimmy Ivy, a patrol officer for the City of Mesquite, testified that he transported
Johnson, the woman, and Anderson to the Mesquite jail. He indicated that after Ms. Castilla’s
property was recovered, he contacted her. He stated that because of the manner in which her
property had become missing, the property was logged in and then turned over to the Dallas Police
Department.
            Johnson argues that the evidence is legally insufficient because it fails to show that he used
or exhibited a handgun during the robbery or that he knew other parties to the offense would use or
exhibit a handgun during the commission of the offense. The court properly instructed the jury that
a person is criminally responsible for an offense committed by the conduct of another if acting with
intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or
attempts to aid the other person to commit the offense. Either Johnson or one of his companions was
seen carrying a gun before the robbery started. Two of his companions were using guns in robbing
or attempting to rob the other two victims while Johnson was assaulting Ms. Castilla in order to get
her purse. Although she did not see a gun, she thought Johnson hit her with one when he assaulted
her. We hold that the evidence is legally sufficient to support Johnson’s conviction under the law
of parties. See Escobar v. State, 28 S.W.3d 767, 774-75 (Tex. App.--Corpus Christi 2000, pet.
ref’d); Scott v. State, 701 S.W.2d 692, 695 (Tex.App.--Fort Worth 1986), aff’d, 768 S.W.2d 308
(Tex.Crim.App. 1989). 
            Although it is immaterial as to this point whether the evidence was legally sufficient to
support his conviction based solely upon his own conduct, we will consider the question at this time
because it is relevant to our determination of point eight. The evidence shows that Johnson hit Ms.
Castilla in the chest with what she thought was a gun. All of the other robbers had firearms in their
possession and used them during the robbery. We hold that from this evidence, the jury could have
reasonably found that Johnson himself used or exhibited a deadly weapon during the robbery. We
therefore find that the evidence is also legally sufficient to support Johnson’s conviction of
aggravated robbery as a principal. We overrule points one and two. 
            Johnson argues in point three that the evidence is factually insufficient to show his identity
because Ms. Castilla only had a limited opportunity to observe her assailant because the robbery
happened at night in a dark parking lot, she did not know the robber, and the robbery lasted only
seconds. He also suggests her attention was diverted to the robberies of Prengaman and Rojas. 
Finally, he asserts that her ability to perceive and remember was hampered by the extreme fear that
Ms. Castilla experienced and her consumption of alcohol at the party. Ms. Castilla testified that she
got a good look at her assailant’s face, and then identified Johnson as the person who assaulted her
and grabbed her purse. She also indicated that she had picked him out of a photographic lineup prior
to trial. She stated that while she had been at the party for hours, she had only had two beers the
whole evening. Although she acknowledged that it was dark, she said that there were streetlights
and a light on a building. Prengaman, who also recalled the streetlights and the light on the building,
testified that the area was reasonably well lit. We hold that the evidence is factually sufficient to
support the conviction. We overrule point three.
            Johnson urges in point four that the trial court erred by failing to apply the law of parties to
the facts of the case. He suggests that the application paragraph of the charge failed to apply the law
to the facts of the case because it did not refer to the abstract portion of the charge where the
elements of party were defined. Johnson made no objection to the charge on this basis at trial. 
While addressing a similar claim, the Texas Court of Criminal Appeals held that even assuming,
arguendo, that the appellant’s claim was correct where, as here, the modes of liability as a party were
included within the application paragraph of the charge given, the point must be overruled because
the appellant suffered no egregious harm. Ransom v. State, 920 S.W.2d 288, 302-03 (Tex.Crim.App.
1996).
            Johnson relies upon the case of Plata v. State, 926 S.W.2d 300 (Tex.Crim.App. 1996). We
find that case to be distinguishable. In Plata, the application paragraph of the court’s charge
instructed the jury to find the defendant guilty if they found that each of two defendants appropriated
United States Currency in the value $20,000 or more and under $100,000. Id. at 303. It made no
reference whatever to the law of parties. On the other hand, the application clause in the charge in
the case at bar makes reference to the fact that the jury may find Johnson guilty as a party if in
committing the offense he was either acting alone or as a party, by soliciting, directing, or attempting
to aid another in committing the offense. While the charge could have been more specific in
requiring a finding of intent to aid the other persons in the commission of the offense, we find that
the charge sufficiently refers back to the instructions on parties so that the charge was not a “total
failure” with respect to applying the law of parties to the facts. We hold that Johnson suffered no
egregious harm as a result of any deficiency in the charge such as that suggested by him in this point. 
See Ransom, 920 S.W.2d at 303.
            Johnson also relies upon the cases of Garrett v. State, 749 S.W.2d 784, 802-03
(Tex.Crim.App. 1986), and Harris v. State, 522 S.W.2d 199, 202 (Tex.Crim.App. 1975). We find
both of those cases to be distinguishable. In Garrett, the court held that evidentiary sufficiency
should be measured by the entire charge rather than solely by the application paragraphs. Garrett,
749 S.W.2d at 802-03; Malik v. State, 953 S.W.2d 234, 238 (Tex.Crim.App. 1997). Johnson cites
Garrett in support of his position that the charge in this case allows a conviction only as a principal, 
not as a party. We do not agree with Johnson’s argument, and we find nothing in Garrett that
supports his assertion. In Harris, the charge failed to apply the law of rape to the evidence, leaving
the jury without any instruction as to under what circumstances they might convict or acquit. Harris,
522 S.W.2d at 202. In the case at bar, the charge does contain an application paragraph that gives
such instructions to the jury. We overrule point four.
            Johnson suggests in point five that the trial court erred by failing to properly limit the relevant
conduct elements in the jury charge. There are three conduct elements that can be involved in an
offense: (1) the nature of the conduct; (2) the result of the conduct; and (3) the circumstances
surrounding the conduct. McQueen v. State, 781 S.W.2d 600, 603 (Tex.Crim.App. 1989). 
Aggravated robbery contains all three conduct elements. Fields v. State, 966 S.W.2d 736, 739
(Tex.App.--San Antonio 1998), rev’d on other grounds, 1 S.W.3d 687 (Tex.Crim.App. 1999). The
trial court in the case at bar gave the definitions of “intentionally” and “knowingly” that are found
in Section 6.03 of the Texas Penal Code. However, in the charge to the jury, the trial court must
confine the “intentional” and “knowing” requirements to the specific conduct element required to
prove the alleged offense. Id. The trial court erred by failing to limit the definitions of mental states. 
Id. 
            Johnson made no objection to the charge as submitted. Therefore, having found error, we
must make an evidentiary review and review the record as a whole to determine if there is any actual,
as opposed to theoretical, harm. Cook v. State, 884 S.W.2d 485, 491-92 (Tex.Crim.App. 1994). Our
review of the evidence and the entire record shows that there were only three or four issues in this
case--Johnson’s identity, whether he threatened or placed another in fear of bodily injury, and
whether he used a gun or knew that the others were doing so. The question of Johnson’s identify
did not involve a contest as to Johnson’s mental state. With respect to the question as to whether
he threatened or placed Mari in fear of bodily injury, the issue as to whether he intended to do so,
as opposed to whether he did so, was not contested. There was also no contest at trial concerning
Johnson’s mental state with respect to the use of a gun. The issue was whether he used a gun at all. 
We conclude that Johnson suffered no egregious harm as a result of the trial court’s failure to limit
the definitions of the culpable mental states to the conduct element or elements of the offense to
which they applied. While Johnson argues that the charge as given could have confused the jury by
their misapplying the definitions, he does not give a specific example of how the charge would have
resulted in confusion. We overrule point five.
            Johnson insists in point six that the trial court erred by providing the jury with a definition
of reasonable doubt. After instructing the jury that the State is required to prove each element of the
offense beyond a reasonable doubt, the trial court instructed them that, “It is not required that the
prosecution prove guilt beyond all possible doubt; it is required that the prosecution’s proof excludes
all ‘reasonable doubt’ concerning the defendant’s guilt.” We have previously held that it is not error
for the trial court to submit such an instruction, noting that it is not a definition of “reasonable
doubt.” Torres v. State, 116 S.W.3d 208, 212 (Tex.App.--El Paso 2003, no pet.). We overrule point
six. 
            Johnson insists in point seven that the trial court erred by instructing the jury that Johnson’s
intent might be inferred from his acts done, words spoken, or both, because it is a comment on the
weight of the evidence. The trial court submitted this instruction without objection. The Texas
Court of Criminal Appeals has held that the giving of such an instruction is error because it is a
comment on the weight of the evidence. Brown v. State, 122 S.W.3d 794, 802 (Tex.Crim.App.
2003), cert. denied, at ___ U.S. ___, 124 S.Ct. 1678, 158 L.Ed.2d 359 (2004). However, the court
also held that this instruction is mild, neutral, and an obvious common-sense proposition, and, in the
case before it, was not of any harm to the accused. Id. at 803. 
            Johnson argues that the instruction is always harmful because it violates the Due Process
Clause. He relies upon the case of Francis v. Franklin, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d
344 (1985). We find that case to be distinguishable. In Francis, the trial court gave the following
instruction to the jury:
The acts of a person of sound mind and discretion are presumed to be the
product of the person’s will, but the presumption may be rebutted. A person of
sound mind and discretion is presumed to intend the natural and probable
consequences of his acts but the presumption may be rebutted. 
  
Francis, 471 U.S. at 315, 105 S.Ct. at 1971-72, 85 L.Ed.2d at 354. The court held that because a
reasonable juror could have understood that instruction as creating a mandatory presumption that
shifted to the defendant the burden of persuasion on the crucial element of intent, and because the
charge read as a whole did not explain or cure the error, the instruction did not comport with the
requirements of the Due Process Clause. Id. at 471 U.S. 325, 105 S.Ct. 1977, 85 L.Ed.2d 359-60. 
Unlike the instruction in Francis, the instruction given in this case did not create a mandatory
presumption and did not shift the burden on intent from the State to the defendant. Consequently,
it did not violate the Due Process Clause by so shifting the burden of proof. We agree with the
Texas Court of Criminal Appeals that Johnson suffered no egregious harm from the trial court’s
giving of this instruction. We overrule point seven.
            Johnson contends in point eight that the trial court erred by including a deadly weapon
finding in the judgment. The trial court found that Johnson used or exhibited a deadly weapon
during the commission of the offense. The charge to the jury required that in order to find Johnson
guilty of aggravated robbery it must find that he, acting alone or as a party, used or exhibited a
deadly weapon, a handgun. Where, as here, the jury is instructed on the law of parties, the jury must
expressly state that the appellant either used or exhibited a deadly weapon or knew that one would
be used or exhibited during the commission of the offense. Taylor v. State, 7 S.W.3d 732, 740-41
(Tex.App.--Houston [14th Dist.] 1999, no pet.). The indictment in this case of aggravated robbery
alleged the use of a deadly weapon as an element of the offense, and the jury found Johnson guilty
as charged in the indictment. We have held that the evidence is legally sufficient to support
Johnson’s conviction both as a principal and as a party. Consequently, the jury made the factual
finding necessary to support the affirmative finding of Johnson’s use or exhibition of a deadly
weapon. Sarmiento v. State, 93 S.W.3d 566, 570 (Tex.App.--Houston [14th Dist.] 2002, pet. ref’d). 
            Johnson relies upon the cases of Travelstead v. State, 693 S.W.2d 400 (Tex.Crim.App. 1985)
and Flores v. State, 690 S.W.2d 281 (Tex.Crim.App. 1985). We find both of those cases to be
distinguishable. In Travelstead, a jury convicted the defendant of the offense of murder. 
Travelstead, 693 S.W.2d at 400. The trial court added to the judgment an affirmative finding that
a deadly weapon was used in the commission of the offense. Id. The jury was charged solely on
Travelstead’s guilt as a party to the offense. Id. at 401. The evidence reflected that it was another
party to the offense who used or exhibited a deadly weapon. Id. The court held that under those
circumstances there could be no deadly weapon finding because at that time it was required that if
the defendant was convicted as a party, there must be evidence that the defendant used or exhibited
the deadly weapon, not another party. Id. at 402. Since Travelstead, the Texas Code of Criminal
Procedure has been revised to provide that a deadly weapon finding may be made either when the
defendant used or exhibited the deadly weapon or when the defendant was a party to the offense and
knew that a deadly weapon would be used or exhibited. See Tex.Code Crim.Proc.Ann. art. 42.12,
§ 3g(a)(2)(Vernon Pamphlet 2004-05). The court in Flores, relying on Travelstead, held that
because the jury had been instructed on the law of parties, there must be an affirmative finding that
Flores himself used or exhibited a deadly weapon. Flores, 690 S.W.2d at 283. As we have noted,
Tex.Code Crim.Proc.Ann. art. 42.12, § 3g(a)(2) has been revised since the rulings in Travelstead
and Flores. In the case at bar, the trial court entered the finding that Johnson used or exhibited a
deadly weapon, a handgun, in the commission of this offense. That finding was justified by the
jury’s conviction of Johnson as alleged in the indictment. Sarmiento, 93 S.W.3d at 570. We
overrule point eight. 
            The judgment is affirmed.

March 17, 2005                                                           
                                                                                    JOHN HILL, Chief Justice (Ret.)

Before Panel No. 5
Barajas, C.J., Chew, J., and Hill, C.J. (Ret.)
Hill, C.J. (Ret.)(sitting by assignment)

(Do Not Publish)